Richard L. LAIBEN, Doris A. Laiben, J. Frank Laiben and Rita J. Laiben, Appellants

v.

DEPARTMENT OF REVENUE of the State of Missouri, A. Gerald Reiss, Director of Revenue, and J. Neil Neilson, Commissioner of Administration for the State of Missouri, Respondents.

No. 60273.

Supreme Court of Missouri, En Banc.

Oct. 10, 1978.

Victor Tell Neff, Barry, Neff & Gallaher, Jefferson City, for appellants.

John D. Ashcroft, Atty. Gen., Bruce E. Anderson, Asst. Atty. Gen., Jefferson City, for respondents.

RENDLEN, Judge.

This appeal, involving construction and validity of a real estate lease, turns on two questions: (1) whether the lease provided for an initial term of six or eighteen months; (2) if for eighteen months, whether the execution of a lease for a term of more than one year was beyond the constitutional powers of State agents to contract and thus void.

The trial court held that the lease provided for an initial term of only six months and that defendants, having given the prescribed notice to terminate, were authorized to vacate the premises without liability for further payment of rents. We affirm.

The cause was submitted on a stipulation of the parties which included the following facts pertinent to the issues: On December 11, 1972, the owners[1] of a building in the City of St. Louis entered into a lease with the Missouri Department of Revenue (Department) for office space, providing for what is described as an "initial term" of six months beginning January 1 and ending June 30, 1973. More than sixty days prior to June 30, 1973, lessee notified lessor of its intention to terminate at the conclusion of the term and pursuant to that notice, vacated the premises. After June 30, 1973, the Department secured other offices in the St. Louis metropolitan area for the operation of its business formerly conducted on plaintiffs' premises and it is conceded that the General Assembly appropriated adequate funds for the rental and leasing of properties for the operations of the Department during fiscal 1973–74. Meanwhile the lessors diligently, but without success, sought to obtain other lessees for the vacated premises during the period July 1, 1973 to June 30, 1974, and it is for the rents from this period they now make claim.

While the lease contains fourteen paragraphs, the controverted provisions are found in five paragraphs, which we have numbered for convenient reference in the order they appear in the lease:

### [2]

The Lessor leases unto the said Lessee the following described premises located at Suite 100–4401 Hampton Ave. (63109) State of Missouri, to wit: first floor (street grade entry level) professional office suite including existing teller cages and lobby counters containing approximately 6311 square feet on the South side of the main entrance lobby and a supplemental 1184 square feet on the lower level having direct private stair access from the first floor. Said suite has two private office rooms, two records vault areas and restroom facilities on the first (ground) floor and one record vault and private office area constructed in the lower level with access to general restroom and stair areas. Existing carpeting in the first (ground) floor to be cleaned and divided partition wall to be erected (at Lessor expense) behind teller cages to provide private general office area on the west side of premises. (Underscoring in the original.)

### [3]

To have and to hold said premises with their appurtenances for the *initial term of this Lease* which shall be for a period of 6 months, beginning Jan. 1st 1973 and ending June 30th, 1973 for the monthly rental of Two Thousand Five Hundred Dollars, payable on the last day of each month during the said term. (Underscoring, except for the phrase "initial term of this Lease," appears in the original.)

### [4]

To have and to hold said premises with their appurtenances for the yearly term beginning July 1st, 1973 and ending June 30th, 1974 for a yearly rental of Thirty Thousand Dollars ($30,000), payable at the rate of Two Thousand Five Hundred Dollars, per month on the last day of each month during the said term.* The premises contain approximately 7495 square feet.[2] (Underscoring in the original.)

---

1. Plaintiffs are the successors and assigns of Alfred E. and Mary Long, the owners named in the lease. The Commissioner of Administration is the successor to the then State Purchasing Agent, who executed the lease with the Director of the Department of Revenue. See § 26.300, RSMo Supp. 1975.

2. The asterisk at the end of line five in paragraph # 4 refers to a footnote on that page which reads "*See Notation Page 3 hereof." However, no such "notation" appears on page 3 of the lease and the footnote apparently refers to an item inadvertently omitted from the final draft.

[5]

The Lessor hereby grants to the Lessee the option to renew this Lease for Five (5) successive one year periods, on the same rental terms and conditions provided herein. If the Lessee remains in the said premises after the period for which they are let, or any extension thereof, or the Lessee shall fail to notify the Lessor of his intention to vacate these premises, it shall be considered as evidence that said Lessee has exercised its option to renew this Lease for a one year period. The Lessee agree [sic] to notify the Lessor in writing not less than sixty (60) days prior to the expiration of the period for which the premises are let, if it intends to vacate the premises. A letter from the Director, Department of Revenue, stating the said intent to vacate, sent by registered mail, return receipt requested, mailed to Alfred E. Long, 2319 Hampton Ave., St. Louis, Missouri 63139 [sic].[3]

[7]

[T]his lease shall not be binding upon the Lessee unless and until general appropriations have been made by the Missouri Legislature for payment of rental on behalf of the Lessee for *the fiscal period embracing the term of,* renewal or extension of this Lease. (Emphasis added.)

Although the parties press conflicting views as to the meaning of the lease, curiously both contend that the language of the lease is not ambiguous, but instead argue that the lease is merely less than artfully drawn. This ignores the fact that the term "ambiguous" means a susceptibility to two or more meanings as well as a vagueness of meaning, *First National Bank of Malden v. Farmers New World Life Ins. Co.,* 455

S.W.2d 517, 522 (Mo.App.1970); *Tenney v. American Life & Accident Ins. Co.,* 338 S.W.2d 370 (Mo.App.1960), and clearly this lease is rife with patent ambiguities.

■ We find that the trial court was justified in concluding that the language of the lease permitted the Department, on timely notice given, to terminate the tenancy at the end of the *initial six month term.*[4] This conclusion rests in part on the fact that paragraphs # 3 and # 4 each describe a separate term of lease. Paragraph # 3, by its express language, sets forth an "initial term" of six months, and the term provided in paragraph # 4 is described by the general expression, "yearly term." Each period or term thus placed in separate paragraphs was accompanied by its corresponding schedule of rental payments. Other lease provisions comport with our interpretation of the lease.

Paragraph # 4 is a telling indication of the parties' intentions as to the length of each term granted in the lease. It speaks of *"the fiscal period embracing the term of,* renewal or extension of this lease." (Emphasis ours.) The fiscal period for Missouri, as provided by law, is July 1 to June 30 of the year following. § 33.110, RSMo 1969. The language of the lease ties each term to a fiscal year and by employing the phrase "embracing the term of," necessarily contemplates terms, renewals or extensions not in excess of 12 months. The first or "initial term," albeit for only the final six months of fiscal 1972–73, was linked to and embraced by the State's fiscal period, July, 1972, through June, 1973. Stated otherwise, it appears the parties intended that the initial term of the lease and any renewal or extension thereof be confined within Missouri's fiscal periods, and the obligation of the Department for the payment of rents be similarly restricted.

3. Although the lease instrument appears to have been taken from a form contract with the blanks filled in, there is no evidence as to which of the parties, if either, prepared the instrument and completed the blanks.

4. The language in paragraph # 5 providing that notice to vacate be given not less than sixty days prior to the "expiration of the period

for which the premises are let" applied to each term or period described in the third and fourth paragraphs as well as to the optional periods granted the lessee under paragraph # 5. It was under this provision that the Department gave its timely notice and vacated the premises in 1973.

Moreover, while not necessary to our holding, it may reasonably be argued that this language reflects a concern for the provisions of art. IV, § 28 of the Missouri Constitution [5] and of this Court's decision in *White v. Jones,* 352 Mo. 354, 177 S.W.2d 603 (1944). There it was held that § 9265, RSMo 1939 [6] (since repealed), forbade state eleemosynary institutions from entering into a lease for six years because the lease created a "debt" for which at the time no adequate appropriation existed. Consequently, the lease was void *ab initio.* The drafter of the lease at bar may have considered the relevant language of art. IV, § 28 sufficiently similar to the proscription of § 9265 to warrant inserting the provision concerning appropriations by the General Assembly during the state's annual fiscal periods, but whatever the subjective consideration of the drafter, the "terms" or "periods" of the lease are treated independently and tied to separate fiscal years of the State.

Appellants, on the other hand, contend # 3 and # 4 should be read together as providing a single initial term of eighteen months. They point to the fact that the extent of the premises let is still being defined at the end of paragraph # 4 rather than at its proper place at the end of paragraph # 2 pertaining to the description of the premises. We do not attach such import to the apparent misplacement of the last sentence of paragraph # 4. It seems more a matter of afterthought or poor draftsmanship than a studied purpose to create an eighteen month initial term. Nor are we impressed by appellants' suggestion

that the separation of the claimed eighteen month period into two paragraphs more appropriately recognized that the Department's obligation depended on legislative appropriations for each fiscal year than a single paragraph delineating eighteen months would have.

Appellants further contend that paragraphs # 3 and # 4 should be read together because paragraph # 5, dealing with option periods, fails to specify to what term the option periods are "successive." If the initial term were for six months, they argue, the optional periods would be successive to that term, rendering paragraph # 4 superfluous. This argument fails because paragraph # 5 states that the renewal periods shall be "on the same rental terms and conditions herein." The reference to the same rental terms can only point to the preceding paragraphs, where the amount of rent, the due date for payment, and the length of the rental are delineated. Paragraph # 5 speaks twice of "the period" for which the premises are let, although paragraph # 4 sets forth a "yearly term" and paragraph # 3 the "initial term" of the lease. It is significant that paragraph # 5 creates one year periods, as does paragraph # 4; paragraph # 5 thus refers back to paragraph # 4 rather than to # 3. To read the reference to "terms and conditions herein" in # 5 to include the amount of rent and the due date for each payment as described in # 4, but not the delineation of a yearly term, ignores the intent of the parties as manifested in the instrument as a whole.

5. Section 28 reads in full:
    No money shall be withdrawn from the state treasury except by warrant drawn in accordance with an appropriation made by law, nor shall any obligation for that payment of money be incurred unless the commissioner of administration certifies it for payment and certifies that the expenditure is within the purpose as directed by the general assembly of the appropriation and that there is in the appropriation an unencumbered balance sufficient to pay it. At the time of issuance each such certification shall be entered on the general accounting books as an encumbrance on the appropriation. No appropriation shall confer authority to incur an obligation after the termination of the

fiscal period to which it relates, and every appropriation shall expire six months after the end of the period for which made.

6. Section 9265 provided in relevant part:
    If the curators, managers, trustees or other officers having control of any . . . eleemosynary . . . institutions . . . shall contract . . . any debt for which there shall not be at the time an adequate appropriation, every such . . . officer . . . . shall be personally liable for such debt to the person with whom such is contracted, . . . and, in addition, shall, on conviction, be deemed guilty of a misdemeanor. . . . . .

We recognize paragraph # 5 could be construed to mean the first option period began following June 30, 1973, and that paragraph # 4 is, as respondent argues, an effort to set forth the precise terms of renewal; on the other hand, it could be that the first of the option periods was intended to commence following June 30, 1974. In either event, we find the "initial term" was for six months with a right to terminate on timely notice.

Appellants next point out that a habendum clause, which they contend defines the extent of the interest or ownership in the premises granted, introduces each of paragraphs # 3 and # 4, setting forth the "initial" and "yearly" terms, and this, they contend, indicates an intention to create a single initial term of eighteen months. This argument would require the conclusion that the use of habendum clauses overcomes the other provisions of the lease which indicate an intention to create separate terms of six months and of one year. For the better part of a century our law has considered the intent of the parties as reflected in the whole instrument to be the "lode star of construction," not the terms of the habendum or other individual clauses. "[A] deed creates the interest which the parties clearly intended it to create, without regard to purely formalistic practices, arbitrary distinctions and niceties derived from the feudal common law, . . ." *Kluck v. Metsger,* 349 S.W.2d 919, 921 (Mo.1961). "The time has long since passed when the tenure of lands by deed . . . was dependent upon the technical meaning of words or construction of sentences in use among old English conveyances." *Long v. Tims,* 107 Mo. 512, 17 S.W. 898, 900 (Mo. 1891). The parties have cited no authority involving a lease with two habendum clauses nor has our research disclosed such a case. We cannot say that the lease, though less than artfully done, manifests an intent to create an initial term of eighteen months by the use of habendum clauses appearing in two separate paragraphs.

Each party suggests alternative wordings or interlineations by which the position of its opponent could have been made clear in the lease and argues that the absence of such wordings supports its own position. We find such speculation of little assistance. It applies equally to every ambiguous provision of the lease; on the whole, the inferences we could draw favor neither side.

We have been mindful, in our analysis, of the canons applicable to the construction of such instruments, especially that which instructs us to ascertain the intent of the parties from the instrument they have executed. *Henry v. Excelsior Springs Mineral Water & Bottling Co.,* 277 Mo. 508, 211 S.W. 9, 10 (1919); *Johnson v. Missouri-Kansas-Texas R. R.,* 216 S.W.2d 499 (Mo.1949). We have not had recourse to the maxim that a lease will be construed most strongly against the party that prepared it, *Keith v. Tucker,* 483 S.W.2d 430, 434 (Mo.App.1972), for we know not by whom or under whose aegis the lease was drafted. Nor have we utilized the adage that a lease will be construed favorably to the tenant, *Amzi Realty & Building Co. v. Kelly,* 49 S.W.2d 214 (Mo.App.1932), in this case involving the State as the tenant. Instead, for the reasons discussed earlier in this opinion, we find that the intent of the parties as reflected in the instrument they signed was to allow the Department of Revenue to vacate the premises after the initial six month term, upon sixty days prior notice. Because of our disposition of this issue we need not reach the constitutional questions raised by respondents. The judgment of the circuit court is affirmed.

MORGAN, C. J., BARDGETT, FINCH, DONNELLY and SEILER, JJ., and HOUSER, Special Judge, concur.

SIMEONE, J., not participating because not a member of the Court when the cause was submitted.