**Wilbur S. BUFFALOW,
Plaintiff-Appellant,**

v.

**Frederick N. BULL, William Sidell, Dean Sooter and United Brotherhood of Carpenters and Joiners of America, Defendants-Respondents.**

No. WD 31436.

Missouri Court of Appeals,
Western District.

July 28, 1981.

Jack L. Campbell, Dennis D. Palmer, Kansas City, for plaintiff-appellant; Shughart, Thomson & Kilroy, Kansas City, of counsel.

C. David Whipple, Whipple, Eisler & Kraft, P. C., Kansas City, William McGowan, Washington, D. C., for defendants-respondents.

Carin A. Clauss, Sol. of Labor, Beate Bloch, Associate Sol., William Taylor, Atty., Washington, D.C., for Secretary of Labor, U.S. Dept. of Labor, as amicus curiae; Robert E. Kopp, U.S. Dept. of Justice, Tedrick House, Regional Sol., John B. Renick, Deputy Regional Sol., U.S. Dept. of Labor, Washington, D.C., of counsel.

Before KENNEDY, P. J., and SHANGLER and SOMERVILLE, JJ.

SOMERVILLE, Judge.

Wilbur S. Buffalow (Buffalow), on the heels of being removed from office as business representative of the Kansas City, Missouri District Council (District Council) of the United Brotherhood of Carpenters and Joiners of America (Brotherhood), filed a multi-count petition in the Circuit Court of Jackson County, Missouri, seeking damages and reinstatement to office.

A prefatory statement is in order to clarify the genesis of this litigation and the identity of the parties. The Brotherhood, prior to Buffalow's removal, had assumed complete supervision over the District Council. Parenthetically, the term "supervision" is synonymous with the term "trus-

teeship" as used in 29 U.S.C. §§ 461–466. The grounds relied upon for placing the District Council under supervision or trusteeship may be fairly paraphrased as follows: failure on the part of the District Council to maintain proper administrative and financial records; lack of cooperation on the part of some business representatives in carrying out the functions of the District Council; and improper "policing" of work jurisdiction resulting in substantial loss of work for the membership of the District Council. Buffalow does not take issue with the grounds relied upon or the procedures followed for placing the District Council under supervision or trusteeship. After the General Executive Board of the Brotherhood assumed supervision over the District Council, William Sidell (Sidell), general president of the Brotherhood, appointed Frederick Bull (Bull) to supervise the affairs of the District Council and Dean Sooter (Sooter) as his assistant. After their appointments, Bull and Sooter removed Buffalow as business representative of the District Council without notice or a hearing and refused to reinstate him. Buffalow had been elected to serve as business representative of the District Council for a term of three years. Approximately a year and a half of his three year term remained at the time of his removal. The record discloses that Buffalow's removal by Bull and Sooter as business representative was occasioned by his attitude of belligerence and scepticism regarding any wrongdoing on the part of the District Council sufficient to justify imposition of the trusteeship and an unsympathetic attitude towards implementation of the corrective programs to be initiated under the trusteeship. Buffalow does not dispute or question the verity of the grounds relied upon by Bull and Sooter for removing him as business representative of the District Council. The Brotherhood, Sidell, Bull, and Sooter were named as defendants in the multi-count petition filed by Buffalow.

The various counts of Buffalow's petition may be generally described as seeking damages for breach of contract, damages for tortious interference with contractual rights, and injunctive relief for reinstatement to office.

Defendants filed a timely petition for removal in the United States District Court, Western District of Missouri, on the theory that Buffalow's exclusive remedy was under 29 U.S.C. § 482 and that said federal statute preempted any state court cause of action by Buffalow. On motion of Buffalow, the United States District Court remanded the case to the Circuit Court of Jackson County, Missouri, on the ground that Buffalow's multicount petition, on its face, failed to contain any allegations which would give the federal court original jurisdiction, and any federal question arising by way of a contemplated "defense" was insufficient to give it original jurisdiction.

After Buffalow's multi-count petition was remanded to the Circuit Court of Jackson County, Missouri, defendants filed a motion for summary judgment and Buffalow responded with a motion for summary judgment as to all issues except damages. Two common issues were drawn by the respective motions for summary judgment which may be tersely formed by placing them in question form. Does 29 U.S.C. § 482(a) provide an exclusive remedy for Buffalow and preempt his state court cause of action? In the event Buffalow's state court action is not preempted by 29 U.S.C. § 482(a), did his removal as business representative of the District Council violate certain provisions of the Constitution and Laws of the Brotherhood? Buffalow contended below, and continues to contend on appeal, that the first question should be answered in the negative and the second question should be answered in the affirmative. Conversely, defendants contended below, and continue to contend on appeal, that the first question should be answered in the affirmative and the second question should be answered in the negative.

The trial court entered summary judgment in favor of defendants and against Buffalow and, albeit anomalously, dually held that 29 U.S.C. § 482(a) preempted Buffalow's state court action and that Buffalow's removal from office as business repre-

sentative of the District Council did not violate any provisions of the Constitution and Laws of the Brotherhood. The matter is now before this court on Buffalow's appeal from the adverse summary judgment entered by the trial court.

The respective motions for summary judgment rested upon sundry exhibits mutually agreed to, certain admissions, uncontroverted portions of various pleadings, and excerpts from various depositions. Suffice it to say, the parties admit that no genuine issue as to any material fact exists and that the sole question on appeal is whether defendants were entitled to summary judgment as a matter of law. *Kaufman v. Bormaster*, 599 S.W.2d 35, 37 (Mo.App. 1980).

It quickly becomes apparent that it may or may not be necessary to answer both questions, supra, in order to dispose of this appeal. If the first question is answered in the affirmative, the issue posed by the second question is never reached. On the other hand, if the first question is answered in the negative, the answer to the second question becomes dispositive of the appeal.

Attention first focuses on the primal question of whether 29 U.S.C. § 482(a) constituted an exclusive remedy for Buffalow and preempted his purported state court cause of action. As noted in *New York Tel. Co. v. New York St. Dept. of Labor*, 440 U.S. 519, 99 S.Ct. 1328, 1334, 59 L.Ed.2d 553 (1979), "[t]he doctrine of labor law pre-emption concerns the extent to which Congress has placed implicit limits on 'the permissible scope of state regulation of activity touching upon labor-management relations.' *Sears, Roebuck & Co. v. Carpenters*, 436 U.S. 180, 187, 98 S.Ct. 1745, 1752, 56 L.Ed.2d 209."

The federal statute, supra, which defendants lean so heavily upon, is part of Title IV of the Labor-Management Reporting and Disclosure Act. Title IV is captioned "Elections" and is codified in 29 U.S.C. §§ 481-483. In order to discern the meaning and import of 29 U.S.C. § 482(a), it must be read in context with certain other provisions of Title IV of the Labor-Management Report-

ing and Disclosure Act. In pursuit of this course, 29 U.S.C. § 481 is captioned "*Terms of office and election procedures*", and subsections (h) and (i), which are the only subsections touching upon the removal of officers, read as follows:

> "*Removal of officers guilty of serious misconduct*
>
> (h) If the Secretary, upon application of any member of a local labor organization, finds after hearing in accordance with the Administrative Procedure Act that the constitution and bylaws of such labor organization do not provide an adequate procedure for the removal of an elected officer guilty of serious misconduct, such officer may be removed, for cause shown and after notice and hearing, by the members in good standing voting in a secret ballot conducted by the officers of such labor organization in accordance with its constitution and bylaws insofar as they are not inconsistent with the provisions of this subchapter."
>
> "*Rules and regulations for determining adequacy of removal procedures*
>
> (i) The Secretary shall promulgate rules and regulations prescribing minimum standards and procedures for determining the adequacy of the removal procedures to which reference is made in subsection (h) of this section."

At this juncture, it is important to note that Buffalow does not contend that the procedures for removal of elected officers contained in the Constitution and Laws of the Brotherhood were inadequate.

29 U.S.C. § 482 is captioned "*Enforcement*". Subsection (a) thereof, the meaning and applicability of which is one of the core issues on appeal, reads as follows:

> "*Filing of complaint; presumption of validity of challenged election*
>
> (a) A member of a labor organization—
>
> (1) who has exhausted the remedies available under the constitution and bylaws of such organization and of any parent body, or
>
> (2) who has invoked such available remedies without obtaining a final decision within three calendar months after their invocation,

may file a complaint with the Secretary within one calendar month thereafter alleging the violation of any provision of section 481 of this title (*including violation of the constitution and bylaws of the labor organization pertaining to the election and removal of officers*). The challenged election shall be presumed valid pending a final decision thereon (as hereinafter provided) and in the interim the affairs of the organization shall be conducted by the officers elected or in such other manner as its constitution and bylaws may provide." (Emphasis added.)

29 U.S.C. § 483, captioned "*Application of other laws; existing rights and remedies; exclusiveness of remedy for challenging election*", reads as follows:

"No labor organization shall be required by law to conduct elections of officers with great frequency or in a different form or manner than is required by its own constitution or bylaws, except as otherwise provided by this subchapter. Existing rights and remedies to enforce the constitution and bylaws of a labor organization with respect to elections prior to the conduct thereof shall not be affected by the provisions of this subchapter. The remedy provided by this subchapter for challenging an election already conducted shall be exclusive."

It may be summarily stated that Buffalow's purported cause of action does not challenge the frequency of elections, attempt to enforce the constitution or laws of the Brotherhood with respect to an election, or challenge an election already conducted.

Returning to 29 U.S.C. § 482(a), defendants, by way of recapitulation, argue that the emphasized language therein is susceptible of but one meaning—redress for removal of an officer by a union in violation of its "Constitution and Bylaws" must be administratively · channeled through the Secretary of Labor and such constitutes an exclusive remedy which preempts any state court action. The argument proffered by Buffalow is diametrically opposite to that of defendants.

When "called upon to determine the applicability of a [federal] statute where the language of the statute does not make crystal clear its intended scope ... [courts] are compelled to resort to the legislative history to determine whether, in light of the articulated purposes of the legislation, Congress intended that the statute apply to the particular cases in question." *Allen v. State Board of Elections*, 393 U.S. 544, 89 S.Ct. 817, 834, 22 L.Ed.2d 1 (1969). Thus, legislative history is looked upon as a fountainhead for divining Congressional intent regarding statutes such as 29 U.S.C. § 482(a) which are patently ambiguous on their face as to their applicability. To this end, this court turns to U.S. Code Congressional and Administrative News, 86th Congress, First Session 1959, Vol. 2, p. 2407,[1] as a source of the legislative history of 29 U.S.C. § 482(a):

"XXIV. REMOVAL OF OFFICERS (SECS 301 [29 USC § 481], 302 [29 USC § 482])

Section 301(g) [29 USC § 481(h)] provides that if the Secretary, upon application of a member of a local union, finds that the constitution and bylaws of such local union do not provide an adequate procedure for the removal of an elected officer guilty of serious misconduct, such officer may be removed by the local's members so voting in a secret ballot election. The procedure allegedly provided for bringing this remedy into play is to be found in section 302 [29 USC § 482]. That section authorizes the Secretary to bring a civil action against the local union in a Federal court upon a complaint of a member of the local alleging that section 301 [29 USC § 481] has been violated (i. e., that there is no adequate procedure for removal of officers in the local's constitution and bylaws) including violation 'of the constitution and bylaws of the labor organization *pertaining to the election and removal of officers.*' Despite the italicized language which was added at the insistence of the minority, the

---

1. Appendix B, Senate Report re the Labor-Management Reporting and Disclosure Act.

phraseology of this provision (sec. 302(a) [29 USC § 482(a)]), is, at best, ambiguous in the extreme. It is exceedingly doubtful whether the Secretary is authorized to act on a complaint of a union member that his local's constitution and bylaws do contain an adequate procedure for the removal of officers, but the local or its officers is nevertheless refusing to comply with its own prescribed procedures in that regard. A close scrutiny of the language leads almost inevitably to the conclusion that these provisions establish a remedy in the courts through the Secretary *only* where the local's constitution and bylaws fail to provide an adequate procedure for removal of the local's elected officers, but do not give judicial relief where such a procedure exists but the local refuses to apply or follow it. The minority urged that section 301(g) [29 USC § 481(h)] be modified to permit the Secretary to sue in the courts upon a finding that an adequate procedure was lacking or, where it was provided *was not being followed*, but the majority would not agree." (Emphasis in original.)

■ Subsections (a) through (g)[2] of 29 USC § 481 have not been set forth because a reading of them clearly discloses that they deal strictly with elections and are therefore not germane to the issue at hand. Subsections (h) and (i) of 29 U.S.C. § 481, previously set forth verbatim, disclose, without any tinge of ambiguity, that they are applicable to the "removal of officers guilty of serious misconduct" solely in the event the Secretary of Labor "finds after hearing in accordance with the Administrative Procedure Act that the constitution and bylaws of such labor organization do not provide an adequate procedure for the removal of an elected officer . . . ." It is once again emphasized that none of the parties contend or assert that the Constitution and Laws of the Brotherhood failed to provide an adequate procedure for the removal of elected officials. As a matter of fact the gist of Buffalow's multi-count petition is that adequate procedures existed but the Brotherhood failed to comply with them. When 29 U.S.C. § 482 (captioned "Enforcement") is construed in pari materia with 29 U.S.C. § 481, no doubt is harbored by this court that 29 U.S.C. § 482(a) was only intended to provide a procedure for the enforcement of those rights or matters referred to in 29 U.S.C. § 481, i. e., those appertaining to elections and the removal of elected officers guilty of serious misconduct where the constitution and bylaws of the labor organization do not provide an adequate procedure for their removal. Conversely, 29 U.S.C. § 482(a) was not intended to provide a procedural remedy, exclusive or otherwise, in the situation at hand, i. e., removal of an officer[3] where no election ramifications are involved and no contention is made that the Constitution and Laws of the Brotherhood do not provide an adequate procedure for removal.

Concededly, the following language contained in 29 U.S.C. § 482(a), to wit, "alleging the violation of any provision of section 481 of this title (including violation of the

---

**2.** Subparagraph (a) of 29 U.S.C. § 481 is captioned "*Officers of national or international labor organizations; manner of election*".

Subparagraph (b) of 29 U.S.C. § 481 is captioned "*Officers of local labor organizations; manner of election*".

Subparagraph (c) of 29 U.S.C. § 481 is captioned "*Requests for distribution of campaign literature; civil action for enforcement; jurisdiction; inspection of membership lists; adequate safeguards to insure fair election*".

Subparagraph (d) of 29 U.S.C. § 481 is captioned "*Officers of intermediate bodies; manner of election*".

Subparagraph (e) of 29 U.S.C. § 481 is captioned "*Nomination of candidates; eligibility; notice of election; voting rights; counting and publication of results; preservation of ballots and records*".

Subparagraph (f) of 29 U.S.C. § 481 is captioned "*Election of officers by convention of delegates; manner of conducting convention; preservation of records*".

Subparagraph (g) of 29 U.S.C. § 481 is captioned "*Use of dues, assessments or similar levies, and funds of employer for promotion of candidacy of person*".

**3.** The parties assume throughout that the term "officer" included Buffalow's status as business representative and for dispositional purposes it is unnecessary to decide whether this assumption is correct or incorrect.

constitution and bylaws of the labor organization pertaining to the election and removal of officers)", casts a shadow of ambiguity when lifted out of context and read separately and apart from all of the other provisions contained in 29 U.S.C. §§ 481–483. The word "including" contained in the language immediately heretofore quoted· is a transitive verb and in the sense in which it is used, particularly in light of its legislative history, refers to component rights or matters contained in 29 U.S.C. § 481 as opposed to referring to new, additional or different rights or matters. Based on the structure of 29 U.S.C. §§ 481–483, the legislative history of said statutes, as found in U.S. Code Congressional and Administrative News, *supra*, and the wording of 29 U.S.C. § 482(a), this court concludes that 29 U.S.C. § 482(a) was not intended to provide a remedy via the Secretary of Labor where, as here, the focal issue is a purported failure to follow rather than a challenge to the adequacy of the procedures in the Constitution and Laws of the Brotherhood for the removal of a business representative of a subordinate body under trusteeship. Under the attendant circumstances at hand, particularly in the absence of any election overtones, the focal issue does not touch upon any component rights or matters within the contemplation of 29 U.S.C. § 482(a).

With reference to the construction given 29 U.S.C. § 482(a) vis-a-vis the applicability or inapplicability of the doctrine of preemption, it is pertinent to note that 29 U.S.C. § 523(a), a component provision of the Labor-Management Reporting and Disclosure Act, provides, insofar as here relevant, that "except as explicitly provided to the contrary, *nothing in this chapter shall take away any right or bar any remedy to which members of a labor organization are entitled under* such other Federal law or *law of any State.*" (Emphasis added.)

There appears to be an arguable diversity of opinion among the limited number of reported cases, both state and federal, directly or obliquely touching upon the issue of whether 29 U.S.C. § 482(a) provides an exclusive remedy and preempts state action under circumstances similar or substantially similar to those pleaded in Buffalow's multi-count petition. *Hodcarriers, Bldg. & Com. Lab. Local U. No. 89 v. Miller*, 243 Cal.App.2d 391, 52 Cal.Rptr. 251 (1966), *Murphy v. Am. Fed. of Grain Millers, Etc.*, 261 N.W.2d 496 (Iowa 1978), *Hannifin v. Retail Clerks International Assn.*, 162 Mont. 170, 511 P.2d 982 (1973), and *Carroll v. N.C.R. Employees' Independent Union*, 12 Ohio App.2d 194, 232 N.E.2d 410 (1967), represent state court decisions holding that elected union officers allegedly removed from office in violation of adequate procedures prescribed by the constitution and bylaws of their respective unions were not precluded from pursuing viable state court remedies on the ground that such remedies were preempted by federal labor statutes. *Nelms v. United Ass'n of Journeymen & App. of Plumbing, etc.*, 405 F.2d 715 (5th Cir. 1968), and *Grove v. Glass Bottle Blowers Ass'n of U. S. & Can.*, 329 F.Supp. 337 (W.D.Penn.1971), represent federal court decisions, which, at least at first blush, appear to support an opposite conclusion. This court observes, albeit most respectfully, that the polarized state and federal decisions cited make no reference to the legislative history of 29 U.S.C. §§ 481 and 482, some do not even mention said statutes, and those which do cite them do not purport to construe them.

■ Although this court is cognizant that in construing federal statutes it is bound by and must follow decisions of federal courts, *Haley v. Metropolitan Life Insurance Company*, 434 S.W.2d 7, 11 (Mo.App.1968). *Nelms v. United Ass'n of Journeymen & App. of Plumbing, etc., supra*, and *Grove v. Glass Bottle Blowers Ass'n of U. S. & Can., supra*, are distinguishable. They are basically distinguishable because neither is decided in the context of federal labor law preemption. *Nelms* involved a bifurcated issue, one aspect of which, the right of a removed elected union official to stand for re-election, clearly fell within the election provisions of 29 U.S.C. § 481, and one aspect of which dealt with said elected union officer's loss of his union office. The court in

*Nelms* held that "since the election has now been conducted, questions of candidacy and right to hold office may only be raised in a suit by the Secretary of Labor under Section 402 of Title IV of the Labor-Management Reporting and Disclosure Act, 29 U.S.C. § 482." 405 F.2d at 717. It is patent that the focus in *Nelms* for decisional purposes was the election aspect of the bifurcated issue and the court apparently concluded that it was unnecessary to treat separately both aspects in order to decide the case. In the context just mentioned, this court respectfully concludes that *Nelms* does not squarely stand as authority for holding that 29 U.S.C. § 482(a) constitutes an exclusive remedy for Buffalow under the facts pleaded in his multi-count petition and that his state court action was preempted by 29 U.S.C. 482(a). In *Grove* it is far from clear whether the plaintiff, an elected union officer, was removed from office due to election irregularities or for some other reason entirely apart therefrom. The court tersely held, absent engaging in any construction of 29 U.S.C. §§ 481 and 482, that "[i]t appears to us that Plaintiff is attempting to litigate his title to office . . . as such he has no standing to sue . . . the exclusive procedure governing elections to and removals from office are those provided by Title IV, Sections 401 and 402 of the L.M.R. D.A.[4] of 1959 (29 U.S.C.A. §§ 481, 482) where the only party who had standing to sue in the United States District Court is the Secretary of Labor." This court respectfully concludes that *Grove*, because of its sparsity of facts and summary reference,

at best, to 29 U.S.C. §§ 481–483, may not be said to squarely stand as authority for holding that 29 U.S.C. § 482(a) constitutes an exclusive remedy for Buffalow.

Having resolved the threshold issue of federal labor law preemption, and finding the doctrine inapplicable by virtue of the construction given 29 U.S.C. § 482(a), the second ground relied upon by the trial court for entering summary judgment in favor of defendants is now reached. The issue presented is whether Buffalow's removal as business representative of the District Council violated certain provisions of the Constitution and Laws of the Brotherhood.

Unanimity prevails between Buffalow and defendants that under Missouri law "the relationship existing between a voluntary labor organization and its members is contractual . . . the constitution and by-laws . . . constitute the contract, which the court will enforce, if it is not immoral, contrary to public policy or the law of the land, or unreasonable." *Farrar v. Messmer*, 368 S.W.2d 933, 936 (Mo.App.1963). No charge is leveled that the Constitution and Laws of the Brotherhood, or any provision thereof, are immoral, unreasonable or contrary to public policy or the law of the land. Unanimity ceases however, as to whether Buffalow's removal violated the Constitution and Laws of the Brotherhood. Although Buffalow concedes that the District Council was placed under supervision or trusteeship by the General Executive Board of the Brotherhood in compliance with § 10–H of the Constitution and Laws,[5] and

---

4. Labor-Management Reporting and Disclosure Act.

5. "H Whenever it appears to the satisfaction of the General President that any Local Union or member thereof, or any District, State or Provincial Council is acting contrary to the welfare of the United Brotherhood of Carpenters and Joiners of America, or that supervision should be established over the conduct of the affairs of any subordinate body as set forth in Section 6-D, he may appoint a committee to hold a hearing, after due notice to such subordinate body or member. Upon completion of

the hearing, the committee shall report its findings and recommendations to the General Executive Board and to the member or subordinate body involved. The General Executive Board is empowered to take such action as is necessary and proper for the welfare of the United Brotherhood of Carpenters and Joiners of America, subject, however, to the right of appeal to the next General Convention, to the extent permitted by Section 57G. If the General President determines that an emergency situation exists, he may appoint a representative to assume supervision over any Local Union or Council pending the holding of a hearing and

that Bull and Sooter had authority under § 6–D of the Constitution and Laws [6] to remove him from office, he vigorously con-

tends that his removal, absent being afforded notice and given a hearing pursuant to § 55 [7] and § 56 [8] of the Constitution and

the completion of the proceedings as provided for in this Section."

**6.** "D The United Brotherhood of Carpenters and Joiners of America shall have the right to establish supervision over and to conduct the affairs of any subordinate body (including the removal of any or all officers of such subordinate body) to correct financial irregularities or to assure the performance of collective bargaining agreements and the responsibility of the subordinate body as a bargaining agent or to protect the interests and rights of the members or whenever the affairs of the subordinate body are conducted in such a manner as to be detrimental to the welfare of the members and to the best interests of the United Brotherhood, subject, however, to the provisions of Paragraph H of Section 10."

**7.** "OFFENSES AND PENALTIES

A   Section 55.   Any officer or member found guilty after being charged and tried in accordance with Section 56, for any of the following offenses, may be fined, suspended or expelled only by a majority vote of the members of the Local Union present at a regular meeting, or of the delegates to the District Council having jurisdiction of the offense.

(1) Causing dissension among the members of the United Brotherhood.
(2) Advocating division of the funds of the United Brotherhood or any subordinate body thereof.
(3) Advocating separation of any subordinate body from the United Brotherhood.
(4) Misappropriating the funds of any subordinate body, or any monies entrusted to him by a member or candidate for the account of any subordinate body.
(5) Willful slander or libel of an officer or any member of the United Brotherhood.
(6) Defrauding the United Brotherhood or any subordinate body.
(7) Furnishing to any unauthorized person, without the consent of the Local Union, a list of the membership.
(8) Divulging to any unauthorized person, the business of any subordinate body without its consent.
(9) Divulging the quarterly Password for any purpose other than to enter the meeting.
(10) Working behind a picket line duly authorized by any subordinate body of the United Brotherhood.
(11) Failure to deposit clearance card before going to work in a locality where a strike or lockout is pending or in effect.
(12) Lumping for any owner, building, contractor, manufacturer, or employer.
(13) Violating the Obligation.

B   A member charged with violating the By-Laws and Trade Rules of the locality in which he is working, shall be notified in writing to appear before the Executive Committee of the Local Union or District Council as the case may be.  If it appears to the satisfaction of the Executive Committee that the violation occurred, the Executive Committee may reprimand the member and make such action a part of the records of the Local Union or District Council or may recommend that the charges be processed in accordance with Section 56.

C   When any member is charged with violating the By-Laws and Trade Rules of a Local Union or District Council, and the records of the Local Union or District Council show that the member has previously been reprimanded under Paragraph B above, the charges shall be processed in accordance with Section 56.  If found guilty after trial, the member may be fined in an amount not in excess of Fifty Dollars ($50.00) by the Local Union or District Council having jurisdiction of the offense.

D   The penalty imposed upon a member may be set aside or reduced by a majority vote of the members of the subordinate body which imposed it before an appeal is filed.  After an appeal is filed the penalty may be reduced or set aside only with the approval of the General Executive Board.

E   A member against whom charges have been preferred, may attend meetings until the charges have been disposed of.  An officer, business representative, delegate, or committeeman may be suspended from office by a majority vote of the members of a Local Union at a regular meeting, or by a majority vote of delegates to a District Council while the case is pending.

F   No officer, representative or member of the United Brotherhood or any Council or Local Union shall be subject to charges or trial based on their actions in complying with or assisting or cooperating in implementing any instructions, directions or rulings of the United Brotherhood or any General Officer."

**8.** "CHARGES AND TRIALS

A   Section 56.   Any member charged under Section 55 shall be given a fair and impartial trial, and must exhaust all his remedies allowed by Sections 56 and 57 before taking his case to the civil courts.

B   A member must be charged and tried within the jurisdiction of the Local Union or District Council where the offense was committed, and where a District Council exists all charges shall be filed in and tried by the District Council. Provided, however, that the General Executive Board shall have jurisdiction to initiate and conduct trials pursuant to the provisions of Section 15D.

Laws of the Brotherhood, constituted an actionable breach of contract. Defendants,

with equal vigor, contend that §§ 55 and 56 of the Constitution and Laws of the Broth-

C   All charges must be in writing, must specify the particular Paragraph of Section 55 or the particular By-Law or Trade Rule violated, and must contain a brief statement of the facts upon which the charge is based.

D   When charges are filed in the Local Union or District Council, they shall be referred promptly to the Executive Committee of the Local Union or District Council. In the event that the Executive Committee determines that the charges are without sufficient foundation or do not conform to the provisions of Paragraphs B and C above or in the event that the charges allege a By-Law or Trade Rule violation which occurred more than thirty (30) days prior to the filing of the charges, the Executive Committee shall return the charges to the member who filed them with a notice that the charges cannot be considered or processed. If the Executive Committee determines that the charges conform to the provisions of Paragraph B and C above, it shall refer the charges to the Local Union or District Council or if it appears to the satisfaction of the Executive Committee that the violation occurred, the Executive Committee may reprimand the member and make such action a part of the record of the Local Union or District Council. The provisions of Section 55B and C shall govern the handling of charges of Trade Rule violation. The Executive Committee shall have no authority to impose penalties.

E   The charges must be read at the meeting and lay over until the next meeting, and the member must be notified by registered or certified mail by the Recording Secretary of the Local Union or District Council to be present, and at the same time shall be furnished by the Recording Secretary with a copy of the charges specified. The notice shall be sent to the member's last known address.

F   A Trial Committee consisting of five members of the Local Union or five delegates to the District Council shall be selected as follows: the Local Union or District Council shall nominate eleven members or delegates. The Recording Secretary of the Local Union or District Council shall place their names in the ballot box and the Vice-President shall draw the same from the box and call the names aloud until five have been drawn. The accused and the accuser shall have the alternative of each challenging any three members of the Trial Committee; the member so challenged shall not serve. When the five have been selected, they shall constitute the Trial Committee and the case shall be given to them for trial.

G   Any officer or member who is a party to or directly interested in any case in a Local Union or District Council, shall not be permitted to act as a member of the Trial Committee.

H   The chairman of the committee shall without delay, summon the accused in writing, together with all witnesses and try the case on such date as the chairman shall determine.

I   The accused and the accuser may appear before the Trial Committee either in person or by counsel (who shall be a member of the United Brotherhood), and shall be entitled to be present at all times when the Trial Committee is receiving evidence. All testimony shall be accurately recorded in writing. There shall be only one official transcript of the proceedings as authorized by the District Council or Local Union and the Trial Committee Chairman shall prohibit the recording or other transcription of the proceedings other than by the designated official reporter. Persons who are not members may be called as witnesses by either side. No member shall be suspended, expelled or fined in an amount in excess of Fifty Dollars ($50.00) unless the proceedings of the Trial Committee shall have been properly recorded by a competent stenographer who need not be a member. If the accused fails to appear, the Trial Committee shall proceed with the trial as though the accused were present. In the event that the accuser fails to appear, costs of the trial not exceeding Twenty-Five Dollars ($25.00) may be charged against him and the charges shall be dismissed by the Chairman of the Trial Committee forthwith.

J   The following trial procedure shall be observed:

(1) The chairman shall read the charges and ask the accused if he is "guilty" or "not guilty." If the plea is "guilty" the Trial Committee shall so find and shall report its verdict to the Local Union or District Council without further proceedings. If the plea is "not guilty" the trial shall then proceed.

(2) The accuser or his counsel, shall present his case first.

(3) Witnesses shall be called into the trial room one at a time, and will leave upon completing their testimony, subject to recall by either the Trial Committee or any of the parties.

(4) The accuser's witnesses shall be called first.

(5) Each party or his counsel shall have the right to cross-examine witnesses presented by the other party.

(6) Before the Trial Committee shall begin their deliberations, all other persons shall leave the trial room.

K   When the committee has come to a decision in the case, the chairman of said committee shall so notify the District Council or Local Union. The committee shall submit a full report of the case with their verdict and the evidence in writing to the Local Union or District Council. The District Council or Local Union shall notify the accused of the meeting at which the committee's report will be presented, and that if the finding is guilty that

erhood are inapplicable when an officer of a District Council, under supervision or trusteeship pursuant to § 10–H and § 6–D, is removed by those appointed to supervise and conduct the affairs of the subordinate body.

None of the parties contend that §§ 55 and 56, emphasized and relied upon by Buffalow, or § 10–H and § 6–D, emphasized and relied upon by defendants, are singularly ambiguous. Their differences center on opposing views as to the effect of § 32–C of the Constitution and Laws (§ 32 in its entirety is captioned "Vacancies In Local Offices"), which reads as follows: "Any officer or Business Representative may be removed after due trial upon charges preferred in conformity with Sections 55 and 56 of the Constitution and Laws." Buffalow contends that § 32–C bridges § 10–H and § 6–D with §§ 55 and 56 and therefore compliance with the latter sections was mandatory in order to effect his removal as business representative of the District Council by the supervisors during the course of the trusteeship. Defendants, on the other hand, contend that § 32–C bears no relationship or applicability to, or in anyway restricts, the authority of those appointed to supervise and conduct the affairs of a subordinate body under trusteeship to remove officers. Where diametrical positions are advanced as to the effect of a single contractual provision and its relationship to other contractual provisions contained in the same instrument, the structure of the composite provisions requires close scrutiny in order to bring the single contractual provision, which is frequently syntactically flawed, into proper perspective. This observation is in noway meant to imply that either § 32–C, viewed singularly, or the Constitution and Laws, viewed collectively, are ambiguous. It is appropriate to be reminded that the Constitution and Laws of the Brotherhood are before this court in the context of a contract. Interpretation and construction of contracts, notwithstanding the fact that the terms are sometimes inadvertently used interchangeably, are distinctly different concepts [9] and connote the application of different standards. The task at hand is one of interpreting the Constitution and Laws, viewed collectively, as opposed to isolating § 32–C, branding it as ambiguous, and undertaking to construe it in a vacuum.

Approached in the frame of reference mentioned above, the rudimentary standard for interpreting contracts is to ascertain the intention of the parties as garnered from the instrument as a whole, and it alone, and to give effect to that intention. *J. E. Hathman, Inc. v. Sigma Alpha Epsilon Club*, 491 S.W.2d 261, 264 (Mo. banc 1973). In interpreting a contract, the importance of viewing the instrument as a whole cannot be minimized, as the sum total of all the separate provisions better expresses the intention of the parties than do isolated provisions lifted out of context. Concomitantly, contracts are to be interpreted so as to reach fair, reasonable, and practical results, for it is to be presumed that the parties contracted to that end. *Engel v. Cord Moving and Storage Co.*, 313 S.W.2d 173, 176 (Mo.App.1958). Tangentially, a contract is not rendered ambiguous by the fact that the parties do not agree upon the interpretation it is to be given. *J. E. Hathman, Inc. v. Sigma Alpha Epsilon Club, supra*, at 264, and *Mickelberry's Food Products Co. v. Haeussermann*, 247 S.W.2d 731, 738 (Mo.1952). A contract is ambiguous "only when it is *reasonably* susceptible of different constructions." (Emphasis

any penalty to be imposed will be considered at that meeting. The notice shall be mailed to the accused and accuser at his last known address not less than ten (10) days before the meeting at which the committee will report. The Local Union to which the member belongs shall be notified of the verdict and the penalty.
L There shall be no debate or review of the case by the Local Union or District Council, except that the accused and the accuser shall be allowed to plead for, or state their side, and it shall then require a majority of the members present to affix such legal penalty as they deem proper. The Chair shall announce the penalty. The Local Union to which the member belongs shall be notified of the verdict and the penalty."

**9.** *Herrick Motor Co. v. Fisher Oldsmobile Co.*, 421 S.W.2d 58, 64 n.1 (Mo.App.1967).

924

added.) *J. E. Hathman, Inc. v. Sigma Alpha Epsilon Club, supra* at 264.

When the Constitution and Laws of the Brotherhood are viewed in proper perspective, i.e., as a whole and consistent with a result bespeaking of fairness, reasonableness and practicality, the controversial provisions brought into focus by the parties become harmonized and shed any superficial aura of uncertainty. Section 32–C, in succinct, unequivocal terms, merely provides that "[a]ny officer or Business Representative *may* be removed after due trial upon charges preferred in conformity with Sections 55 and 56 of the Constitution and Laws." (Emphasis added.) It is cast in permissive rather than mandatory terms, does not purport to prescribe exclusive grounds and procedures for the removal of officers and business representatives, and makes no reference to § 6–D or § 10–H empowering those exercising authority under a trusteeship to remove officers and business representatives. Section 6–D, equally succinct and unequivocal, and noticeably free of limitations, restrictions or any reference to §§ 55 and 56 regarding the removal of officers, provides as follows: "The United Brotherhood of Carpenters and Joiners of America shall have the right to establish supervision over and to conduct the affairs of any subordinate body (*including the removal of any or all officers of such subordinate body*) to correct financial irregularities or to assure the performance of collective bargaining agreements and the responsibility of the subordinate body as a bargaining agent or to protect the interests and rights of the members or whenever the affairs of the subordinate body are conducted in such a manner as to be detrimental to the welfare of the members and to the best interests of the United Brotherhood, subject, however, to the provisions of Paragraph H of Section 10." (Emphasis added.) Section 10–H referred to therein makes no reference whatsoever to §§ 55 and 56. It does, however, provide a right of appeal to the General Convention of the Brotherhood for one who questions the propriety of placing a subordinate body under trusteeship or actions taken by those responsible for supervising the subordinate body during the course of the trusteeship. Buffalow neither claims nor contends that he attempted or was denied a right of appeal to the General Convention of the Brotherhood, nor does he question the adequacy of such procedure.

Tested in the crucible of "reasonableness," an interpretation of the Constitution and Laws of the Brotherhood in accordance with Buffalow's contention would effect an unreasonable result for a number of reasons. Beyond peradventure, placing a subordinate body under trusteeship in accordance with the provisions of § 10–H and § 6–D and assuming authoritative control over its affairs is a drastic and extraordinary step. As previously noted, Buffalow does not question, on either substantive or procedural grounds, the propriety of placing the District Council under supervision or trusteeship. Under the provisions of the Constitution and Laws of the Brotherhood any right of tenure that Buffalow might have had prior to the time the District Council was placed under trusteeship was superseded by the plenary power granted under § 10–H and § 6–D. It is patent from the Constitution and Laws of the Brotherhood that the purpose of placing a subordinate body under supervision or trusteeship is to serve the greater good of the rank and file of union members. The provisions of the Constitution and Laws of the Brotherhood for the removal of officers of a subordinate body under trusteeship constitute a broad grant of authority free of any substantive or procedural limitations or restrictions imposed by §§ 55 and 56. Any lessor grant of authority would defeat the purpose of placing a subordinate body under trusteeship. Once a subordinate body is placed under supervision or trusteeship, the Brotherhood, and its designated representatives, carry the responsibility of rectifying the conditions which prompted and justified placing the subordinate body under trusteeship, and to that end authority is necessarily vested in them to remove officers of a subordinate body in their discretion without substantive or procedural restrictions or limitations of any kind other than a right of

appeal to the General Convention of the Brotherhood. Moreover, Buffalow's contention that discharge of officers of a subordinate body under supervision or trusteeship is subject to §§ 55 and 56, is irreconcilable with the hierarchy of authority and responsibility spelled out in the Constitution and Laws of the Brotherhood for conducting the affairs of a subordinate body under trusteeship and promoting and protecting the best interests of the union membership during the course of the trusteeship. It would be both incongruous and unreasonable to give a tortured interpretation to the Constitution and Laws of the Brotherhood which would result in the District Council, a subordinate authority, sitting in review of the action taken by the Brotherhood, a superior authority.

A reasonable interpretation of the Constitution and Laws of the Brotherhood, when viewed as a whole, compels the conclusion that §§ 55 and 56 were inapplicable to Buffalow's removal as business representative of the District Council by Bull and Sooter while the District Council was under supervision or trusteeship. Perforce, defendants were entitled to summary judgment in their favor on Buffalow's multicount petition for breach of contract and tortious interference with contractual rights premised solely on the alleged applicability of §§ 55 and 56 of the Constitution and Laws of the Brotherhood. Although the trial court erred in entering summary judgment in favor of defendants and against Buffalow on the ground of federal labor law preemption, it correctly did so on the ground that Buffalow's removal was not in violation of the Constitution and Laws of the Brotherhood and for this reason the judgment of the trial court is affirmed.

Judgment affirmed.

All concur.