CMC CORPORATION and Lucille K. Kuhlman, Plaintiffs-Appellants,

v.

Robert A. GROTH and Edith M. Groth, Defendants-Respondents.

No. 44952.

Missouri Court of Appeals, Eastern District. Division Four.

April 5, 1983.

Brian C. Underwood, Robert O. Hetlage, St. Louis, for plaintiffs-appellants.

Jeffrey E. Hartnett, Clayton, for defendants-respondents.

SMITH, Judge.

Plaintiff appeals from a judgment against it in a court-tried declaratory judgment case which sought to recover increased rental under a sublease. The claim for increased rental was based upon a cost of living clause. We reverse.

On May 1, 1972, plaintiffs CMC and Lucille Kuhlman[1] entered into a ten year lease for commercial property owned by Mrs. Kuhlman. Rent for the first year was $9000 payable $750 per month. In subsequent years the "minimum base rental ... shall be a sum in dollars equivalent to the present purchasing power of Nine Thousand

1. Mrs. Kuhlman was a named plaintiff but has not appealed from the judgment.

Dollars ($9000.00)." The lease then set forth in detail the method to be used to compute the base rent for subsequent years. The lease contained no requirement of notice by the landlord to trigger the subsequent year base rental.

In December 1975, CMC, with the permission of the landlord, entered into a sublease with defendants, the Groths. That lease was to commence January 1, 1976. It contained the following pertinent provisions:

"For value received, CMC Corporation ... hereby subleases to R.A. and E.M. Groth ... the premises referred to in the Lease dated May 1, 1972, the following described premises ... to have and hold from January 1, 1976 until December 31, 1976, at an annual rental of $10,200.00, payable in advance monthly at the rate of $850.00. A copy of said prime lease is attached hereto, and is an integral part of this lease agreement ....

"This sublease is made subject to the conditions contained in the prime lease, and Sublessee covenants and agrees to keep and perform all the terms of said prime lease agreement in its entirety ...

"The effective date of this sublease shall be January 1, 1976, and shall continue until December 31, 1976, at the monthly rate of $850.00. Prime Lessor has not requested any cost of living rental increases provided for in the prime lease; however, any increases in rent so received shall be passed along to the Sublessee....

"Sublessor hereby grants to Sublessee an option for the remaining term of the prime lease agreement, the term to begin January 1, 1977 through April 30, 1982. If no notice is given to Sublessor 60 days prior to the end of the lease year, the option will automatically extend. Rental will remain at $850.00 per month, and lease will remain subject to all terms and conditions of the prime lease."

The parties to the sublease initialed each page of the prime lease. From May 1972 until March of 1980, CMC paid rent of $750 per month to Mrs. Kuhlman, and from January 1976 on, the Groths paid rent of $850 per month to CMC. In March 1980, Mrs. Kuhlman, through her attorney, made demand on CMC for the full amount of rent due but unpaid based upon the cost of living clause, amounting to $21,500.38. Within a month CMC paid Mrs. Kuhlman the demanded amount and in turn made demand upon the Groths for $15,661.06 as the amount due under the sublease pursuant to the cost of living clause of the prime lease. Following refusal of that demand this suit followed, seeking declaratory judgment that the Groths are obligated under the sublease to pay CMC any cost of living rental increases payable and paid by CMC to Mrs. Kuhlman for the term of the sublease.

The trial court found for defendants basing its decision on findings that:

(1) Mrs. Kuhlman would have been barred by laches from collecting the increased rents from CMC, and CMC was therefore a volunteer in paying the sums demanded, and

(2) such volunteered payments prejudiced the Groths thereby estopping CMC from denying the Groths the defense of laches, and

(3) that the Groths had an obligation under the sublease to pay cost of living increases under the sublease agreement until December 31, 1976, but that thereafter the rents due were fixed at $850 per month, and the language "lease will remain subject to all terms and conditions of the prime lease" was intended to apply to all provisions except those relating to rent payments.

We examine first the laches finding. The prime lease clearly does not require any notice from the landlord to trigger the cost of living provision. By the terms of the lease each year's rental is to be computed utilizing a formula set out in the lease and equally available to both plaintiffs, and the Groths. The cost of living provision was not simply an additional charge levied under the lease; rather it established the new yearly rent, either higher or lower than the year before. In *Conservative Federal Sav-*

*ings and Loan Association v. Warnecke,* 324 S.W.2d 471 (Mo.App.1959), we held a similar clause did not require notice from the landlord to become effective, even though there only the landlord had the requisite information to compute the new rent. Under the lease here the lessee was fully capable of making the yearly rental computation and was bound under the lease terms to pay the rent provided in the lease as recomputed annually.

" 'Laches' is the neglect for an unreasonable and unexplained length of time under circumstances permitting diligence, to do what in law, should have been done . . . . [T]he delay involved must work to the disadvantage and prejudice of the defendant." *Lake Development Enterprises, Inc. v. Kojetinsky,* 410 S.W.2d 361 (Mo.App.1966) [11–17]. "Where no one has been misled to his harm in any legal sense by the delay, and the situation has not materially changed, the delay is not fatal." *Shaeffer v. Moore,* 262 S.W.2d 854 (Mo.1953) [11–14], quoting from 2 Pomeroy's Equity Jurisprudence § 419d at 177 (5th ed.)

■ We are unable to find laches applicable here. Mrs. Kuhlman made demand well within the period of the statute of limitations to recover the rent provided for in the lease.[2] § 516.110(1), RSMo 1978. We are unable to perceive what "harm in any legal sense" could possibly have occurred to CMC in requiring it pay in a lump sum its lease obligations, which under the terms of the lease it should have been paying monthly. Laches was not available to CMC as a defense against Mrs. Kuhlman, and CMC's failure to invoke a non-meritorious defense did not cause it to become a volunteer in paying its obligations under the lease.

■ Such a determination disposes of the trial court's ruling concerning estoppel. CMC's payment of its obligation cannot serve to estop it, as stated in the court's order, from denying "the defendants the defense of laches which it [CMC] could have raised against plaintiff, Lucille Kuhlman,"

for it had no such defense. Nor did CMC act or make a statement or admission inconsistent with the claim asserted against the Groths. Such act, statement, or admission is an essential element of equitable estoppel. *Peerless Supply Co. v. Industrial Plumbing and Heating Co., Inc.,* 460 S.W.2d 651 (Mo.1970) [13–18]. The parties to the sublease agreed that CMC would "pass along" the increases in rent when they were received from CMC by Mrs. Kuhlman. That is exactly what CMC did. There is no basis for an estoppel here.

■ We turn to the Groths' obligations under the sublease. The trial court found that the sublease did not provide for increased base rent under the cost of living clause after the first year. It did find that the sublease provided for such increase during its first year. This conclusion leaves the anomalous situation of reducing the rent after the first year. We do not find such to be the intent of the parties as reflected in the written documents—the prime lease and sublease.

The sublease creates a base rent of $850 per month. That same base rent is carried forward to succeeding years under the option agreement. The sublease also specifically refers to the "cost of living rental increase" contained in the prime lease and provides that when a request for increase is received it "shall be passed along to the Sublessee." The prime lease mandating the increased base rent was made a part of the sublease, was attached to that document, and was initialed by the defendants. They were, therefore, fully aware of its provisions. As we have previously held, the obligations of the prime lease regarding cost of living adjustments were automatically triggered. The parties to the sublease apparently agreed between themselves that the rent under the sublease would be increased when request under the prime lease was made. But they clearly recognized that any such rental increase would be "passed along" to the sublessee, and the trial court

2. There was evidence that in 1980 Mrs. Kuhlman's affairs were in some "disarray," that she was in her eighties and was approaching senility. The absence of the higher rent payments was discovered by her attorney during his work on her taxes.

recognized that intention as it pertained to the first year of the sublease. We cannot interpret the statement "rental will remain at $850.00 per month" in the option paragraph as expressing an intention contrary to the earlier statement that cost of living increases will be "passed along" to the sublessees.[3] We find the $850 amount to be the base rent for the premises under the sublease to which the cost of living increases required under the prime lease were to be added.[4] The two leases, read together, reflect that the parties to the sublease deferred the time when the obligation became payable to the time demand was made by the prime lessor. The two leases do not reflect that the liability for the increased rent was eliminated. Ascertaining the intention of the parties as expressed by their contract (including both leases) is the cardinal rule of interpretation. Such interpretation should yield fair, reasonable and practical results. That interpretation should be made on the basis of the contract as a whole, and not on isolated parts lifted out of context. *Buffalow v. Bull*, 619 S.W.2d 913 (Mo.App.1981) [4–6]. We conclude the parties to the sublease intended that increases in rent produced by the cost of living clause in the prime lease would be borne by the sublessee.

Judgment is reversed and cause remanded for further proceedings consistent with this opinion. The term of the lease having now expired, an award of money damages rather than declaratory relief would appear appropriate.

PUDLOWSKI, P.J., and KELLY, J., concur.

---

**3.** In fact the $850 figure never was the actual rental for the property as the trial court recognized in holding that the sublease authorized a cost of living adjustment during the first year, if requested by the prime lessor of the sublessor.

**4.** We note in passing that the sublease limits the increases in rent to those provided in the prime lease. The increases in CMC's rental therefore are to be added to the $850 base rent. The sublease does not provide for utilization of the prime lease formula in computing the rent due under the sublease. CMC's demand was based upon such use of the formula and was therefore larger than that to which it was entitled under the sublease.