**Lillie KNIGHT, Plaintiff-Appellant,**

v.

**Carol Rebecca DeMAREA, Defendant-Respondent.**

**No. WD 34105.**

Missouri Court of Appeals, Western District.

March 20, 1984.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied May 1, 1984.

Application to Transfer Denied June 19, 1984.

Wm. J. Hill, William C. Martucci, Spencer, Fane, Britt & Browne, Kansas City, for plaintiff-appellant.

Jack B. Robertson, Brian J. Fowler, Field, Gentry, Benjamin & Robertson, Kansas City, for defendant-respondent.

Before TURNAGE, C.J., and MANFORD and LOWENSTEIN, JJ.

TURNAGE, Chief Judge.

This case involves a dispute between an attorney and a client over the amount of the attorney's fee. The court entered judgment in favor of Lillie Knight, the attorney,

in the sum of $6,125, but Knight appeals contending the fee should be $27,500. Affirmed as modified.

Rebecca DeMarea was the daughter of John W. Doane. Doane died in September of 1974, leaving a will by which he bequeathed 45% of the capital stock of Tradex to DeMarea and the remaining 55% to Mary Carey, an employee of Tradex.

DeMarea and her husband, Larry, consulted Knight with reference to a will contest. Knight agreed to file such a suit and after discussing the suit with the DeMareas, Knight prepared a contract covering her services which she and the DeMareas signed. The contract provided for a contingent fee and contained the following provisions:

> That said attorney shall receive an attorney fee of one-fourth of the net amount of the assets of the Estate of John W. Doane, obtained by said attorney either as the result of the trial of said will contest action, or by compromise settlement of same, over and above the value of forty-five per cent of the stock in the Mid-Continent Grain and Salvage Company, Inc., a corporation, doing business as the Tradex Stores which stock is specifically bequeathed to said Carol Rebecca DeMarea under the terms of the aforesaid instrument purporting to be the Will of said John W. Doane. It is the intent of the parties hereto that no attorney fee shall be charged against the value of the aforesaid forty-five per cent of said stock, but that said attorney fee will be based solely upon the net amount of the assets of said estate obtained by said attorney in said will contest action as aforesaid, over and above the value of said forty-five per cent of said stock, and over and above inheritance and federal estate taxes, and the cost of administration of said estate.

Knight filed the will contest suit and, thereafter, tried the same to a jury. The jury returned a verdict upholding the will. Before trial, Carey had made an offer through her attorney to purchase DeMarea's 45% of stock but this offer was based on deferred payment with no money down. DeMarea accepted Knight's advice that this was not a good offer and allowed it to expire. There was discussion between Knight and DeMarea concerning the filing of an appeal. The DeMareas initially took the position that they did not want to appeal, but Knight told them an appeal was necessary to protect their bargaining position if they hoped to obtain anything from the estate. DeMarea then agreed that an appeal be taken.

After the appeal was filed Knight and Carey's attorney received a letter from this court inviting them to appear for a settlement conference. After lengthy negotiations an agreement was reached by which Carey agreed to borrow sufficient funds to pay $105,000 and to assign a promissory note payable to Tradex in the amount of $5,000 to DeMarea in exchange for her 45% stock interest.

In June of 1977, after Carey offered to pay $110,000, Knight presented DeMarea a new attorney fee agreement which provided for DeMarea to pay certain expenses and an attorney fee in an amount which was left blank. DeMarea refused to sign this agreement. In November of 1977, Knight presented DeMarea with another agreement pertaining to attorney fees which called for Knight to be paid one-fourth of the $110,000, or $27,500. DeMarea refused to sign that agreement.

Because of the dispute concerning the attorney's fee the $105,000 in cash was deposited in Bannister Bank. The bank filed an interpleader suit naming Knight and DeMarea. Knight filed a cross-claim against DeMarea in which she claimed expenses and in Count II alleged that, after the unfavorable jury verdict, she and DeMarea reached a new understanding and agreement by which Knight was to proceed with the appeal while attempting to obtain a fair price from Carey for the sale of DeMarea's stock. Knight further alleged that pursuant to this new agreement she perfected the appeal and obtained a favorable bargaining position for DeMarea which resulted in the sale of DeMarea's

stock for $105,000 cash and a $5,000 promissory note. Knight further alleged that as a result of the new agreement she was entitled to a fee of 25% of the $110,000 received by DeMarea for her stock. DeMarea filed an answer to the cross-claim in which she denied making a new agreement for attorney fees and alleged that if Knight were entitled to any fee it was only one-fourth of the difference between $85,500, the value of 45% of the stock as shown on the federal estate tax return, and the $110,000 paid by Carey.

At trial on Knight's cross-claim Knight acknowledged the original written agreement providing for a contingent fee but said she had a new agreement with DeMarea to sell the 45% interest of Tradex stock for DeMarea. Knight acknowledged that she did not discuss with DeMarea how she would be paid under the new agreement or how she would set her fee. Knight stated that she did not discuss the amount of her fee under the new agreement because she thought DeMarea was intelligent enough to know that Knight intended to charge for all of the time put in after trial.

DeMarea testified that she was willing to pay Knight one-fourth of the difference between $85,500, which was the value of 45% of the stock as it was shown on the federal estate tax return, and the $110,000 which Carey paid for DeMarea's stock. DeMarea further testified that at a settlement conference held in connection with the appeal Knight said the written contract was invalid after the will contest was tried. She further quoted Knight as saying that she did not have an agreement with DeMarea other than the written agreement. She said Knight was asked about the problem with the written agreement and Knight said it was just not enough. DeMarea denied that any agreement had been made except for the written contingent fee contract.

By the first count of Knight's cross-claim she sought to recover expenses advanced by her. At the beginning of the trial on Knight's cross-claim the parties stipulated as to the amount of expenses and no question is presented on this appeal concerning them.

■ Knight contends that the court erred in failing to find that a new agreement had been entered into for attorney fees because her services after the will contest trial were inconsistent with the written contract and because there was a new transaction by which Knight was employed to sell DeMarea's stock. These contentions boil down to a single contention that the evidence showed that Knight and DeMarea entered into a new agreement for attorney fees after the trial. The short answer to this contention is that the evidence does not show that a new agreement was reached. Although Knight testified there was a new agreement she could not supply details of the agreement concerning the amount of her fee nor how the fee was to be set. Knight could say only that she thought DeMarea was intelligent enough to know that Knight was not working free in her post-trial efforts to reach a settlement between DeMarea and Carey. DeMarea testified there was no new agreement and the first she knew that Knight was unhappy with the written agreement was after the settlement had been reached with Carey and Knight presented her with an agreement to be signed which had the amount of the attorney fee blank. The court correctly rejected the argument that a new agreement was made.

■ Further, Knight contends that her post-trial time is not covered by the written agreement. This contention is contrary to the rule that a contingent fee contract includes work on an appeal absent any provision to the contrary. The general rule is stated in *Annotation: Attorneys-Contingent Fee Contract*, 13 A.L.R.3d 673, 677–78 (1967):

> In a number of cases it has been held either explicitly or by necessary implication that in the absence of an express provision to the contrary a contingent fee contract entered into between an attorney and his client covers services rendered by the attorney in prosecuting or defending an appeal from a judgment in

the case for which he was employed and, therefore, the attorney is not entitled to any additional compensation for such services.

Knight's contingent fee contract did not contain an express provision related to an appeal. Thus, it falls under the general rule that the contract did include services to be performed by Knight on appeal. The wisdom of the rule is apparent—if the attorney is to be entitled to a contingent fee then it is necessary either to defend a favorable judgment on appeal or to attempt to overturn an unfavorable judgment. In either effort the attorney is doing only that which would be required to achieve a favorable outcome which would assure the right to collect a contingent fee.

In this case, Knight insisted over the objection of DeMarea that an appeal be filed in order to protect and hopefully enhance DeMarea's bargaining position with Carey. Knight concedes that at the point the jury returned an unfavorable verdict she was not entitled to any fee. Therefore, her only hope of becoming entitled to a fee under the agreement was to file an appeal and either attempt to get the judgment reversed with an order for a new trial and a more favorable outcome, or to reach some settlement while the matter was still pending on appeal.

Knight's principal argument in urging the existence of a new agreement is simply that the services for which she now claims compensation were performed after the will contest trial. However, since the agreement did not provide otherwise, the services on appeal were a part of Knight's agreement and she is not entitled to additional compensation for the time and effort expended after the unfavorable verdict.

■ Knight next contends the court erred in failing to award her a fee for her post-verdict time on the theory of quantum meruit. It should first be observed that Knight did not plead a cause of action in quantum meruit in her cross-claim, rather she pleaded that the parties had entered into a new agreement. Of course, the existence of a new agreement would be contrary to a theory of quantum meruit. Although Knight failed to prove a new agreement, she may not convict the trial court of error for refusing to grant her recovery on quantum meruit since an express and enforceable contingent fee contract exists. In that situation the attorney is bound thereby and limited to the fee provided in the contract. The attorney may not proceed in quantum meruit: "[T]o obtain a second bite of the apple." *Kramer v. Fallert*, 628 S.W.2d 671, 675[4] (Mo.App.1981). Since Knight failed to prove a new agreement, the original written contingent fee agreement is enforceable and effectively precludes Knight from asserting a claim in quantum meruit for time expended after the verdict.

Knight also contends that the court erred in construing the contingent fee agreement to base the fee on the value of 45% of all of the stock as such stock was valued for federal estate tax purposes. The trial court held that since the agreement was silent as to how or when the stock bequeathed to DeMarea should be valued it would be fair and reasonable to take the value assigned to all of the stock for federal estate tax purposes and calculate 45% of that amount as being the value of the stock which DeMarea was to receive under the will. The court found that the total value assigned to the stock on the federal estate tax return was $190,000 and that 45% of that amount was $85,500. The court subtracted $85,500 from the $110,000 which Carey agreed to pay DeMarea for her stock and arrived at the amount of $24,500. The court then assessed Knight's fee at one-fourth of that amount as being the amount which Knight recovered over and above that which DeMarea would have received from her father's estate without any legal effort. Using that calculation the court awarded Knight an attorney's fee of $6,125.

■ An agreement between an attorney and client is to be construed under the same rules as apply to other contracts. *Kramer, supra* at 674[1]. In *Buffalow v. Bull*, 619 S.W.2d 913, 923[4–6] (Mo.App.

1981), the court stated: "[C]ontracts are to be interpreted so as to reach fair, reasonable, and practical results, for it is to be presumed that the parties contracted to that end." The trial court found that a fair and reasonable construction of the contingent fee contract would be to value the stock as it did and take 45% as the share which DeMarea would have received under her father's will had she not filed suit or taken legal action. The only alternative offered by Knight is her contention that since 45% of the stock of Tradex was a minority interest it was worthless. Although Knight testified that, in her view, DeMarea's 45% interest should be considered worthless, the expert appraisal which Knight obtained in an effort to achieve a settlement with Carey demonstrates that it was not worthless. Knight requested DeMarea to obtain an expert appraisal of the value of the Tradex stock so that a realistic demand could be made to Carey for the purchase of the DeMarea interest. DeMarea obtained an appraisal from Dale Boughton, a bank president from St. Louis, valuing all of the Tradex stock at $300,000 to $350,000. Knight obtained an expert appraisal from James L. Seck, a CPA, valuing all of the stock of Tradex at $329,566. Seck discounted the value of the 45% interest by 20% because it was a minority interest and because of the lack of marketability of a minority share. In his opinion, the value of the 45% interest was $118,644. Thus, Knight's opinion that DeMarea's 45% interest was worthless and that, therefore, she should have an attorney fee of 25% of the $110,000, was contradicted by her own evidence. The trial court was entitled to believe, as it did, that DeMarea's 45% was not worthless.

The trial court correctly held that under the contingent fee agreement DeMarea would have received $85,500 without any legal action and that Knight's 25% fee should be applied to the difference between $85,500 and the $110,000 which DeMarea actually received.

**1.** This is the effective date of the amendment to § 408.020 which raised the rate of interest from

Knight finally contends that the court erred in failing to award prejudgment interest on the $6,125 awarded to her. Under § 408.020, RSMo 1978, Knight was entitled to prejudgment interest on her liquidated claimed amount. *Burger v. Wood,* 446 S.W.2d 436, 443[10] (Mo.App.1969). Although Knight claimed she was entitled to $27,500 and received judgment for only $6,125 she is not deprived of the right to prejudgment interest on the amount actually awarded. *Burger, supra,* at 444, held that interest may be allowed to a plaintiff even though he is found not entitled to the full amount of his demand. The fact that the person against whom a demand is made for the payment of money denies liability for all or a portion of the claim does not relieve the obligor of the duty to pay interest on the amount found to be due. *Schmidt v. Morival Farms, Inc.,* 240 S.W.2d 952, 961[20, 21] (Mo.1951).

DeMarea suggests that she tendered the amount of $6,125 to Knight, thereby cutting off the running of interest. However, DeMarea neither pleaded nor proved a tender under the requirements relating to tender stated by the court in *Hart v. Rowan Plastering Co., Inc.,* 88 S.W.2d 264, 265[2, 3] (Mo.App.1935). In fact, DeMarea simply makes the bare assertion that she made a tender for the first time in her brief in this court.

Under *Burger* and *Schmidt* Knight is entitled to prejudgment interest on the award of $6,125 from the date of her demand on November 22, 1977, through September 27, 1979, at the rate of 6%. From September 28, 1979,[1] to the date of judgment, June 15, 1982, she is entitled to interest at the rate of 9%. Section 408.020, RSMo Supp.1982.

The judgment awarding Knight $6,125 is affirmed. The court is directed to modify the judgment by adding prejudgment interest at the rates outlined immediately above.

All concur.