KAROHL, Judge.
Custom Builders Corporation (builder) filed a petition against Lawrence and Nancy Chesebro (homeowners) to enforce a settlement agreement on disputed claims. Builder alleged: (1) the parties entered into an agreement for a mutual release on February 23, 1988; (2) builder fulfilled its obligations under the agreement; and (3) homeowners refused to complete the settlement. The trial court entered judgment in *14 favor of homeowners. Builder appeals. We affirm.
Except for conflicting testimony of the parties’ attorneys, the relevant facts are simple and essentially not disputed because they are based on documents. In August 1986, homeowners contracted with builder for construction of a custom shell home. Homeowners refused to pay the $6,404.28 balance claimed by builder on the contract because of complaints surrounding builder’s performance under the contract founded on homeowners' belief the roofing was improperly installed. Both parties retained counsel and initiated settlement negotiations.
On December 22, 1987, following settlement negotiations builder’s attorney sent homeowners’ attorney a document entitled “Mutual Release” and a cover letter stating: “We have in our file the original Lien Waivers of Custom Builders Corporation and its subcontractors and we will deliver them to you upon receipt of your client’s cashier’s check for $3,200.00 and two duly executed Mutual Releases.”
Homeowners did not execute the proposed release which released builder from any guarantee on material and workmanship pertaining to the roof. Homeowners amended builder’s release, executed and mailed copies to builder. The only relevant change was the deletion of the words “material and” from builder’s proposed release which had the effect of not releasing builder from an obligation on the roofing materials. Homeowners set a deadline of February 26, 1988, for builder’s acceptance of the amended release. By letter dated February 23, 1988, builder’s attorney sent homeowners’ attorney two executed copies of homeowners’ release. However, builder changed the release by reinserting by inter-lineation the words “material and.” In a letter accompanying the re-altered release, builder’s attorney wrote:
Pursuant to our recent telephone conversation, enclosed you will find the 2 fully executed copies of the Mutual Release in the captioned matter wherein I amended the Release on page 2 thereof by inserting, as you can see, “material and” between “on” and “workmanship” and initialed same. Please have your client initial the change and return a fully executed copy to us along with a cashier’s check in the amount of $3,200.00 made payable to our client, Custom Builders Corporation.
Builder also delivered the lien waivers with the express condition that homeowners’ attorney not deliver the lien waivers unless a check in the amount of $3,200 was sent to builder. Homeowners never executed the re-altered release or gave builder a check. Their attorney did not deliver or misuse the lien waivers.
Builder’s attorney attempted to contact homeowners’ attorney many times by letter and telephone. Finally on May 16, 1988, homeowners’ attorney wrote builder’s attorney to inform him a check was being held until the manufacturer’s warranty on the roofing materials was issued. The parties corresponded for several months. Builder emphasized it never warranted roofing materials. The original contract provided the only warranty on roofing materials was the manufacturer’s warranty. However, homeowners learned the only way to obtain the manufacturer’s warranty was through papers filed by builder. Builder insisted the manufacturer routinely warranted roofing material without the proper documentation. Homeowners refused to release builder on roofing materials unless it provided a warranty for them or helped them obtain a written warranty from manufacturer.
Builder attempted to secure a manufacturer’s warranty for homeowners but failed. Meanwhile, homeowners hired an expert to view their roof. Homeowners learned the roof was improperly installed and proper installation was a prerequisite for the manufacturer’s warranty. This lawsuit ensued. On June 16, 1989, homeowners’ attorney returned the original lien waivers to builder’s attorney in anticipation of trial.
In its first point, builder alleges the court erred in failing to find a settlement agreement. Builder argues the disagreement over the insertion of the words “material *15 fic. Neither driver utilized warning devices. It was these vehicles that Patrick swerved to avoid hitting.
Defendants initially challenge the standing of plaintiffs to bring and pursue the lawsuit and to receive a judgment thereon. In May 1990, plaintiffs filed for bankruptcy. A trustee was appointed and in June applied to the bankruptcy court to employ plaintiffs’ personal injury counsel as special counsel to pursue the personal injury litigation. This application was granted by the bankruptcy court. The trustee did not intervene in the personal injury action. On the last day of trial, but prior to a verdict, plaintiffs applied to the bankruptcy court to exempt the personal injury litigation from the bankruptcy estate. Subsequent to the trial the trustee and the Patricks entered into a stipulation that the first $100,000 of the personal injury judgment, less attorney’s fees, would be the property of the bankruptcy estate. In addition the $25,000 received in settlement from Griffin, minus attorney’s fees, was made a part of the bankruptcy estate. The settlement had been effectuated prior to the filing of the petition in bankruptcy and $100,000 had been offered by defendants in settlement of the personal injury claim prior to filing that petition. Defendants contend that the bankruptcy trustee was the real party in interest in plaintiffs’ suit and the case should have been dismissed for that reason.
When a debtor files for bankruptcy under Chapter 7, 11 U.S.C. § 541(a)(1) requires the debtor to schedule as assets “all legal and equitable interests of the debtor in property as of the commencement of the case”. Harris v. St. Louis University, 114 B.R. 647 (E.D.Mo.1990). After the property enters the bankruptcy estate section 522 of the bankruptcy code lists exemptions the debtor may claim. In re Mitchell, 73 B.R. 93 (E.D.Mo.1987). That section also provides individual states the opportunity to “opt out” of the federal exemption scheme and create their own exemptions. The state of Missouri has chosen to opt out. Section 513.427 sets forth the state scheme. Any property of the estate which is exempt from attachment and execution, under Missouri law, is an allowable exemption from the bankruptcy estate.
In filing the exemption request the personal injury claim was effectively listed as an asset and then exempted. Further, the asset was known to the trustee and the court well before the exemption request and the trustee and the debtors were negotiating the distribution of any judgment received. At the time the exemption request was filed the personal injury claim was unliquidated and could not have formed a basis for an attachment or execution. State ex rel. Government Employees Insurance Company v. Lasky, 454 S.W.2d 942 (Mo.App.1970) [4-7]; In re Mitchell, supra; Scarlett v. Barnes, 121 B.R. 578 (W.D.Mo.1990) [3-9], As such it was outside the bankruptcy estate and the plaintiffs were the real parties in interest. It is certainly clear here that the trustee, the bankruptcy court and the debtors intended to have the claim pursued by the plaintiffs and that the bankruptcy estate stood to benefit and in fact did benefit from the continuation of the suit by the plaintiffs. We find no error in the trial court’s action in refusing to dismiss the case.
Defendants premise error on the failure of the trial court to grant their motion for judgment notwithstanding the verdict on the basis that plaintiffs failed to establish that defendant Alphin was the proximate cause of the accident. They contend that Alphin was not negligent, that the only negligent actor was Griffin. The well-established test of proximate cause is: “... whether, after the occurrences, the injury appears to be the reasonable and probable consequences of the act or omission of the defendant. The negligence of defendant need not be the sole cause of the injury. It is sufficient that it be one of the efficient causes thereof, without which the injury would not have resulted. A party is held liable if his negligence, combined with the negligence of others, results in injury to another.” Warner v. Pruett, 599 S.W.2d 207 (Mo.App.1980) [2].
Alphin and Griffin met on highway A by prearrangement. They each parked *16 their trucks partially on the roadway and across from each other. Their combined actions created the narrow traffic space which Patrick considered inadequate to drive through. Neither Alphin nor Griffin utilized available warning lights or cones to advise drivers cresting the hill of their presence or that they were stopped. Al-phin did not utilize a co-worker riding with him as a flagman to warn approaching traffic of the dangerous condition. A jury could properly find that both Alphin and Griffin were negligent and their combined negligence was the cause of Patrick’s accident and injuries.
Defendants also challenge the sufficiency of the evidence to establish Patrick’s main complaint of injury. The injury involved was temporal lobe disorder causing Patrick to display “organic brain syndrome, explosive type.” This condition is permanent in nature and makes the patient unemployable. The condition is difficult of diagnosis and cannot be detected through objective medical tests such as EEG, CAT scans, or MRI. A clinical neuropsychologist and a psychiatrist both testified that based upon their evaluation of Patrick and discussions with his family, the head trauma sustained in the accident created the brain trauma which caused the temporal lobe disorder resulting in the organic brain syndrome. Testimony by members of Patrick’s family established the extreme mood swings typical of the condition and their origin after the auto accident. In Bonner v. Watkins Motor Lines, Inc., 494 So.2d 1363 (La.App.1986) [3] the court found the testimony of plaintiff’s children and medical experts substantial evidence to support plaintiff’s recovery for temporal lobe disorder and organic brain syndrome. The evidence here is substantially similar to the evidence in that case. There was substantial evidence to establish medical causation.
Defendants also challenge the sufficiency of the evidence to establish Patrick’s loss of future earning capacity because the business he was conducting at the time of the accident was unprofitable. Our courts have allowed juries to infer a loss of earning capacity without the aid of experts when the disability precludes basic employment of any kind. Coulter v. Michelin Tire Corporation, 622 S.W.2d 421 (Mo.App.1981) [33]. The evidence was that Patrick was permanently disabled from any kind of work. He had always previously been employed and was young enough to have continued working but for his disability. The jury could properly consider damages for loss of earning capacity.
Defendants challenge the verdict-directing instruction as not supported by the evidence. What we have heretofore stated concerning Alphin’s negligence disposes of that contention. Defendants also challenge three evidentiary rulings of the court. We have reviewed those challenges and the court’s actions and find no abuse of discretion in the court’s rulings. No precedential purpose would be served by a discussion of those contentions. We have similarly reviewed defendants’ contention that a new trial should have been granted because the verdicts were excessive. It is the function of the jury to fix the amount of damages. Its determination should not be disturbed unless the amount is so grossly excessive that it shocks the conscience of the court. Gardner v. Reynolds, 775 S.W.2d 173 (Mo.App.1989) [1]. The injury sustained by Patrick was catastrophic, both to himself and to his wife. His condition renders him unable to work or to participate in normal family and social activities. The condition requires considerable work and effort by family members to cope. We are unable to say that the award shocks the conscience.
Plaintiffs, in their cross-appeal, assert they are entitled to prejudgment interest pursuant to § 408.040.2 because they offered to settle the case for less than the amount of the judgment. Their demand contained three claims, one for plaintiff husband, one for plaintiff wife and one for damage to the family business. The total of the three claims contained in the settlement offer exceeded the amount of the judgment, although the settlement offer for the husband and wife’s claims was less than the judgment. The third claim was not tried but the record does not reflect that plaintiffs ever offered to settle the *17 and” by builder in homeowners’ proposed release is a mere technicality because builder never warranted roofing materials. We review the judgment of the trial court under the standards set forth in Murphy v. Carron, 536 S.W.2d 30, 32 (Mo. banc 1976).
A settlement agreement is a species of a contract. Randall v. Harmon, 761 S.W.2d 278, 279 (Mo.App.1988). Therefore, this appeal is governed by contract lav/. Id. “An offer must be accepted as tendered to result in a contract.” F.S. Crook v. C. & R. Heating & Serv., 787 S.W.2d 763 (Mo.App.1990). “Where the purported acceptance of an offer introduces new or variant terms or omits, enlarges or modifies the terms of the offer, no contract has been formed and a response amounts to a counter offer and rejection of the original offer.” Id. at 764. In this case the evidence is insufficient to support a finding the parties entered into a contract, oral or written. Nor was the subject of dispute, the quality of the roofing materials or a warranty by the manufacturer, a mere technically. It was the heart of the dispute and involved a part of the construction contract.
■ Homeowners offered evidence they were not satisfied with the installation of two-way glass, contrary to specifications for one-way glass, and were upset over improper installation of the shingles, unevenness of the roof, and the resulting improper drainage. The roof was the major item of dispute between the parties.
Builder’s original mutual release of December 1987 was an offer of settlement rejected by homeowners. Homeowners’ amended mutual release of February 1988 was a counter offer rejected by builder. The re-insertion by builder of the terms “material and” was a counter offer, mirroring their first offer. Homeowners never accepted builder’s last offer.
Builder argues: (1) homeowners accepted their mutual release by accepting delivery of the lien waivers; (2) homeowners’ silence coupled with their failure to act is tantamount to acceptance under an exception to the general rule; and (3) it was justified in expecting a reply and in con-eluding homeowners’ silence indicated assent, not rejection. In support of its position, builder relies on Moore v. Kuehn, 602 S.W.2d 713 (Mo.App.1980).
In that case, Moore, a repairman, sued the Kuehns, husband and wife, for repair work on a fire-damaged building where the couple lived and operated a business. The Kuehns did not sign the written estimate submitted by the repairman. The court found:
[T]he evidence indicates that the writing was the sole offer made by Moore to Kuehn; that Kuehn was aware of the terms of that offer; that he instructed Moore to complete one of the items proposed; that he subsequently permitted Moore, without objection, to complete all the work proposed in the writing and in fact cooperated with him in one facet of the job; and that [Kuehns] accepted the benefit of Moore’s performance. There is no evidence that appellants either questioned the necessity of any of the proposed repairs or contested the proposed contract price. In view of this evidence, we do not believe that Kuehn’s contemporaneous refusals to sign the proposal (for the stated reasons that he believed Poole should sign it first or that his wife had it at home) were such that they indicated that he did not in fact impliedly assent to Moore’s full performance in accordance with the proposal. Id. at 719.
The instant case is readily distinguishable from Moore where the Kuehns accepted performance of Moore’s services without dispute and refused to pay the value therefore. In the present case, the condition of the roof and the value of the installation was in dispute. Undisputed acceptance of the work is not involved.
Although homeowners’ attorney held the lien waivers in trust by placing them in his file he did so subject to express conditions. Neither the attorney nor homeowners exercised control over the waivers in a manner inconsistent with builder’s rights or instructions. The escrow was not an acceptance of builder’s offer. Moreover, builder was not justified in conclud *18 ing homeowners’ silence was an assent to the re-altered release because in its letter builder prescribed a certain mode of acceptance. See Sargent v. Wekenman, 374 S.W.2d 635, 638 (Mo.App.1964). Homeowners did not initial the change, return an executed copy or send a cashier’s check. Nor did homeowners’ attorney deliver the mutual release or lien waivers to anyone.
Accordingly, the court did not err in ruling against builder on the claim of enforcement of settlement agreement. The evidence supported a finding there was no settlement contract, oral or written.
Next, builder alleges the court erred in overruling its objection to homeowners’ attorney acting as a witness and an advocate during the trial. See Rule 4, adopting Rule 3.7 of the Rules of Professional Conduct. It claims the attorneys agreed before trial other counsel would conduct the trial. Homeowners’ attorney testified and conducted direct examination of builder’s attorney and of another witness. He also argued homeowners’ motion for directed verdict at the close of builder’s case. Builder’s attorney testified and argued against homeowners’ motion for directed verdict. He also gave directions to trial counsel for builder. Homeowners’ response to the objection consisted of a denial of an oral agreement and a contention that homeowners’ “negotiating” attorney was necessary to the defense so as to prevent a substantial hardship.
Whether there was an oral agreement was a matter for the trial court as the fact finder. The claim of substantial hardship appears frivolous in a court tried case where the only dispute involved the simple issue of whether there was a written or oral agreement of settlement, and the evidence on the fact issue consisted of undisputed documents in regard to a written settlement and the testimony of two attorneys in regard to an oral agreement.
We reject this claim of error only because we find no prejudice in allowing both attorneys to testify and in some respects advocate. In this court tried case other counsel appeared on behalf of both parties. Counsel for builder testified he “cleared that [reinsertion of release on materials] with [homeowners’ attorney] and sent him a letter and the mutual releases as changed” as evidence the attorneys orally agreed to withdraw a release of builder on roofing materials. Homeowners’ attorney testified he never told builder’s attorney homeowners “had accepted [builder’s] terms of settlement.” On these facts the only disputed fact issue for the court was resolved by an implied finding there was no oral agreement. Both parties confirmed by their evidence no written agreement was ever executed by both parties. Accordingly, we find no prejudice to builder in the court ruling which allowed homeowners’ attorney to act as a witness on disputed facts and an advocate together with co-counsel.
This holding is confined to the facts in the present case and represents no precedent that the provisions of Rule 3.7 should not be strictly followed. The ruling was erroneous. The rule is founded on solid principles of fairness and represents a source of protection for parties, attorneys and the trier of fact. In the present case, both attorneys were witnesses and advocates regarding a single contested issue. A study of the trial does not support a finding the trier of fact was in any way hindered in this case by the dual role adopted by counsel for both sides. Only because we find no prejudice, we reject the request for a new trial based on the ruling.
Finally, builder alleges the court erred in allowing homeowners to present evidence constituting an affirmative defense not properly pled. Homeowners denied the existence of a contract of settlement. There was evidence from which the court could find no oral agreement, and undisputed evidence from which the court did find no written agreement of settlement. In view of the finding and judgment, any dispute regarding any issue of affirmative defense is moot.
Judgment is affirmed.
SMITH, P.J., and AHRENS, J., concur.