**SPECIALTY RESTAURANTS
CORPORATION,
Respondent,**

v.

**Gordon R. GAEBLER, P.C., Appellant.**

**Nos. WD 53241, WD 53279.**

Missouri Court of Appeals,
Western District.

Nov. 18, 1997.

Robert Bjerg, Kansas City, for Appellant.

George Steve Ruprecht, Kansas City, for Respondent.

SPINDEN, Judge.

The parties have filed cross appeals in this attorney fee dispute. Gordon Gaebler, a lawyer, appeals the circuit court's judgment that he is not entitled to keep a $30,000 advance paid by his client, Specialty Restaurants Corporation. Specialty Restaurants appeals the circuit court's judgment that Gaebler was entitled to a separate, hourly fee for appealing the dismissal of Specialty Restaurants' case, and for unpaid fees due on two other cases, and that it was not entitled to interest on the $30,000 advance.

Specialty Restaurants owned and operated restaurants. It hired Gaebler for various legal matters, including three lawsuits stemming from the 1985 collapse of a Kansas City restaurant it owned. The first case involved structural damage to the restaurant building. The second case involved an allegation that Specialty Restaurants fraudulently obtained a $1 million insurance settlement for the building's collapse. The third case concerned an engineering malpractice claim against the structural engineering firm which designed the restaurant.

During the trial of the first case in 1990, one of Specialty Restaurants' officers asked Gaebler to help it determine whether the engineering firm had any liability for the collapse. Gaebler agreed to accept the case, and Stanley H. Kimmel, Specialty Restaurants' general counsel, wrote Gaebler a letter dated October 5, 1990, outlining their agreement concerning Gaebler's fee:

This letter confirms our telephone conversation of October 5, 1990 with regard to your representation of Specialty Restaurants Corporation in its action against [the engineering firm] for professional liability.

We have agreed that you will litigate this matter vigorously to a conclusion, through an anticipate [sic] trial to be calendared in September of 1991, for a contingent fee set at

1. 15% of the net recovery up to one million dollars, plus

2. 20% of the net recovery from $1,000,000.01 to $1,999,999.99, plus

3. 25% of the net recovery from $2,000,000.00 to $2,999,999.99, plus

4. 33.33% of all net recovery in excess of $2,999,999.99.

SRC has agreed, in consideration of your agreeing to undertake this work on the contingency schedule set forth, to advance the sum of $30,000.00, as set forth below, and to pay as incurred all approved costs of the litigation. All costs of recovery, and all sums advanced by SRC to support the litigation, will be deducted from gross dollars recovered to yield net recovery.

SRC will pay the $30,000.00 advance by the following payments:

| | |
|---|---|
| 10/10/90 | $10,000.00, plus |
| 11/10/90 | $ 5,000.00 plus |
| 12/10/90 | $ 5,000.00 plus |
| 1/10/91 | $ 5,000.00 plus |
| 2/10/91 | $ 5,000.00. |

SRC will pay all approved costs as incurred. You are authorized to advance costs up to $500.00. All costs in excess of $500.00 shall be approved in advance by counsel for SRC. Approval may be oral, later confirmed in writing by you, or may be obtained by signing written request for authorization, prepared by you.

You have advised me a complete draft of a Complaint against [the engineering firm] will be prepared for my review and comments on or before October 12, 1990.

Gaebler accepted the terms of the engagement letter in a letter dated October 9, 1990.

After Gaebler filed suit against the engineering firm on Specialty Restaurants' behalf, the circuit court granted summary judgment in September 1991 for the engineering firm. Before perfecting an appeal, Gaebler sent a letter to Specialty Restaurants in November 1991 stating that he would represent Specialty Restaurants in the appeal at the "normal agreed upon standard hourly rate." Specialty Restaurants did not respond and did not tell Gaebler until March 1992, after he had completed his work on the appeal, that it considered the appellate work to be on

the same contingency outlined in the October 5, 1990, letter.

On August 31, 1993, Specialty Restaurants filed for bankruptcy. The bankruptcy court confirmed Specialty Restaurants' third amended plan for reorganization on October 11, 1995.

On July 28, 1995, more than three years after the final judgment in the engineering malpractice litigation, Specialty Restaurants sued Gaebler to recover the $30,000 advance memorialized in the October 5, 1990, letter. Gaebler denied liability and counterclaimed for fees allegedly remaining unpaid in his work for Specialty Restaurants on two other cases.

During trial, Gaebler testified that he had "flatly refused" to represent Specialty Restaurants in the engineering malpractice case unless he was "paid an absolute sum of money up front in advance before performing any legal services." He described the fee agreement as a "blended or special type of contingent fee where you have a floor or a guaranteed fee and with a kicker or contingency."

The circuit court declared that the engagement letter was unambiguous and memorialized the parties' agreement that Gaebler be paid on a contingency basis. The circuit court found that the $30,000 was an advance of Gaebler's contingency fee which Gaebler was obligated to return because Specialty Restaurants recovered nothing in its lawsuit. The circuit court found that the engagement letter was "for services through trial and did not extend to any possible appeal." It awarded Gaebler payment for his services on the appeal and the remaining balances due him on the other litigation matters:

> At all times mentioned herein the rates and fees [Gaebler] charged were fair, reasonable and in accordance with the express agreement of [Specialty Restaurants]. [Specialty Restaurants] made payments at those rates, ratified the agreement, accepted the benefit of the services and never challenged nor objected to any service nor monthly itemized statement.

Gaebler appeals the circuit court's judgment requiring that he return the $30,000 advance to Specialty Restaurants. Specialty Restaurants cross-appeals on three points. First, it contends that the circuit court erred in determining that Gaebler was entitled to hourly fees for the appeal of the engineering malpractice litigation. Second, it contends that the circuit court erred in ruling for Gaebler for fees owed in other legal matters because its reorganization plan in bankruptcy barred those claims. Third, it contends that the circuit court erred by not awarding it prejudgment interest on the $30,000 advance.

■ The determining factor in this case is the proper interpretation of the October 5, 1990, letter which embodied the parties' agreement concerning Gaebler's fee. The circuit court found that it was the final and complete expression of the parties' agreement concerning Gaebler's fee, and the parties do not contest that finding. The circuit court concluded that the letter's articulation of the parties' agreement was "clear and unambiguous." This is significant because "[t]he parol evidence rule precludes oral evidence used to vary or contradict the terms of an unambiguous and complete written instrument absent fraud, common mistake, accident or erroneous omission." *Norden v. Friedman*, 756 S.W.2d 158, 163 (Mo. banc 1988).

We disagree with the circuit court's interpretation that the letter was unambiguous. It lends itself to the parties' differing interpretations of it. "[T]he term 'ambiguous' means a susceptibility to two or more meanings as well as a vagueness of meaning[.]" *Laiben v. Department of Revenue*, 572 S.W.2d 173, 175 (Mo. banc 1978). Gaebler's and Specialty Restaurants' dispute focuses on the meaning of "advance."

Gaebler contends that the $30,000 was a fee he required up front in addition to a percentage of any recovery Specialty Restaurants might obtain. Gaebler points to the sentence which says, "All costs of recovery, and all sums advanced by Specialty Restaurants to support the litigation, will be deducted from gross dollars recovered to yield net recovery." He argues that because the contingency fee was to be calculated from "net recovery," everyone understood that the advance was not a part of the contingency.

Specialty Restaurants contends that it was advancing Gaebler a portion of the contingency fee to which he might become entitled if the lawsuit were successful. It notes that the letter's second paragraph said, "We have agreed that you will litigate this matter vigorously to a conclusion, through an anticipate[d] trial to be calendared in September of 1991, for a contingent fee[.]" It argues that reading this sentence in the context of the letter's reference to calculating the contingency fee from "net recovery" makes clear that the advance was prepayment of the contingency fee.

As used in the letter, the term "advance" is ambiguous because the letter does not inform the reader what the $30,000 was advancing. "Advance" is far from self-explanatory. A dictionary definition of the word is:

> [T]o pay money or render other value before it is due; ... to loan; to furnish capital in aid of a projected enterprise, in expectation of return from it. To supply beforehand; to furnish on credit or before goods are delivered or work done; to furnish as a part of a stock or fund; to pay money before it is due; to furnish money for a specific purpose understood between the parties, the money or sum equivalent to be returned; to furnish money or goods for others in expectation of reimbursement.

BLACKS LAW DICTIONARY 52 (6th ed.1990). This definition contemplates both Gaebler's and Specialty Restaurants' interpretations of the word. Had the parties clarified whether Gaebler was to retain or to forfeit the $30,000 should the lawsuit be unsuccessful, their intent would be evident. Without such a clarification, the letter is reasonably susceptible to either Gaebler's or Specialty Restaurants' interpretation, so, as a matter of law, the term "advance" was ambiguous.

■ When an ambiguity thwarts a court's determining the parties' intent from the plain meaning of the contract's language, the court must glean the parties' intent from evidence of their "relationship ..., the subject matter of the contract, the facts and circumstances surrounding the execution of the contract, the practical construction the parties themselves have placed on the con-

tract by their acts and deeds, and other external circumstances that cast light on the intent of the parties." *Royal Banks of Missouri v. Fridkin,* 819 S.W.2d 359, 362 (Mo. banc 1991). When all else fails, "[a]n agreement that is ambiguous should be construed against the drafter." *Baker v. Whitaker,* 887 S.W.2d 664, 670 (Mo.App.1994). *See also Graham v. Goodman,* 850 S.W.2d 351, 355 (Mo. banc 1993).

The circuit court received evidence regarding the parties' intent, but we presume that, in light of its conclusion that the letter was "clear and unambiguous," it did not consider it. We, therefore, remand this case to the circuit court with instructions that it deem the letter's use of the term "advance" to be ambiguous and that it glean from the extrinsic evidence in the record what the parties' intent was. If the record does not supply sufficient evidence of that intent, the circuit court may receive additional evidence.

■ We reach the same conclusion concerning Specialty Restaurants' first point in its cross-appeal. It argued in that point that the circuit court erroneously determined that its agreement with Gaebler for a contingency fee did not cover the appeal. The circuit court found that the contingency fee agreement covered only "services through trial and did not extend to any possible appeal."

■ Specialty Restaurants notes that the parties agreed that Gaebler would litigate the matter "to a conclusion, through an anticipate[d] trial to be calendared in September of 1991, for a contingent fee ... [.]" It contends that "to a conclusion" would have included an appeal. Typically, a contingency fee agreement includes appeal of a case. *Knight v. DeMarea,* 670 S.W.2d 59, 62 (Mo. App.1984). This, however, is subject to the parties' agreement. *Id.*

Gaebler responds that his agreement with Specialty Restaurants was not a traditional contingency fee arrangement subject to the general rule. He contends that "through an anticipate[d] trial" modifies "conclusion" so that the services contracted for ended with termination of the trial.

Again, contrary to the circuit court's ruling, the letter is ambiguous. The plain language does not necessarily support the circuit court's conclusion that the parties intended for Gaebler to receive an additional fee in representing Specialty Restaurants on appeal. We, therefore, reverse the circuit court's judgment and remand for reconsideration in light of the extrinsic evidence it heard.

■ In its second point, Specialty Restaurants contends that Gaebler's claim for fees in other cases were barred by Specialty Restaurants' bankruptcy plan for reorganization. Gaebler responds that his claims were not barred because he did not receive notice of Specialty Restaurants' bankruptcy and because Specialty Restaurants did not prove that he was listed among its creditors in the reorganization plan.

■ The bankruptcy code does not bar an individual creditor from asserting a claim if the debtor does not list or schedule the creditor in time to permit the creditor to protect his rights, unless the creditor had notice or actual knowledge of the case. *Shore v. Ultimate Hair and Skin Care*, 850 S.W.2d 954, 956 (Mo.App.1993).[1] The debtor has the burden of proving that the creditor was scheduled or that the creditor knew of the bankruptcy in sufficient time to act to protect itself. *Moore v. Kuehn*, 602 S.W.2d 713, 716 (Mo.App.1980).

■ Specialty Restaurants did not prove that Gaebler was a listed creditor discharged by Specialty Restaurants' bankruptcy. The bankruptcy document which Specialty Restaurants submitted to the circuit court did not include a copy of the reorganization plan. To prove that a creditor had "notice or actual knowledge" sufficient to justify discharge of an unscheduled debt, the proof "must consist of more than mere speculative, constructive or imputed knowledge; it must be actual notice imparted in time to allow the creditor

to prove his claim." *Id.* "[B]are knowledge that one's debtor has gone into bankruptcy is insufficient to invoke the exception to the rule that unscheduled debts are not dischargeable." *Id.*

■ Gaebler testified that he had received neither official notices from the bankruptcy court nor letters from Specialty Restaurants' attorneys confirming that Specialty Restaurants was seeking bankruptcy and that he should file a claim. John Kenney, a Specialty Restaurants official, acknowledged that he could not offer any evidence that a notice to creditors was sent to Gaebler. Although the circuit court had evidence that a June 26, 1995, letter from Specialty Restaurants' general counsel to Gaebler indicated that Specialty Restaurants was involved in bankruptcy and that Gaebler could file a motion with the bankruptcy court for leave to file a late claim, the circuit court had a reasonable basis for concluding that Gaebler had not received "timely notice of the actual commencement of bankruptcy proceedings." *Id.* at 717. Specialty Restaurants' second point is denied.

■ Its third point asserts that the circuit court erred in not awarding it prejudgment interest on its reclamation of the $30,000 paid to Gaebler. Specialty Restaurants contends that it was entitled to prejudgment interest from June 16, 1992, the date the United States Court of Appeal, Eighth Circuit, ruled against it on the underlying malpractice action. This, Specialty Restaurants contends, was the date when Gaebler failed to earn his contingency fee and, therefore, was when he should have returned the $30,000 advance fee—assuming the $30,000 was an advance of Gaebler's fee.

■ Prejudgment interest is "the measure of damages for failure to pay money when payment is due, even though the obligor refuses payment because he questions legal liability for all or portions of the claim."

---

1. Section 523(a)(3) of 11 U.S.C. says, "A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt ... neither listed nor scheduled under section 521(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit—(A) if such debt is not of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim, unless such creditor had notice or actual knowledge of the case in time for such timely filing[.]" *Shore*, 850 S.W.2d at 956.

*Ehrle v. Bank Building and Equipment Corporation of America,* 530 S.W.2d 482, 497 (Mo.App.1975). Generally, "in the absence of an agreement to pay interest, the law will imply damages for not discharging a debt when it ought to be paid." *Wulfing v. Kansas City Southern Industries, Inc.,* 842 S.W.2d 133, 160 (Mo.App.1992). In an action for breach of contract, "interest ordinarily runs from the date of the breach or the time when payment was due under the contract." *Id.*

Section 408.020 grants creditors interest "when no other rate is agreed upon, for all moneys after they become due and payable, on written contracts, and on accounts after they become due and demand of payment is made[.]" Specialty Restaurants contends that because the fee agreement was a written contract that it was not obligated to make a demand of Gaebler to start the accrual of prejudgment interest.

 Although this was a contract for services, this was not an action to recover a payment due at a particular time under the contract as are those written contracts contemplated by the statute. Even assuming that the $30,000 was advance payment of a fee, this contract made no provision for the repayment of any advanced fees. Prejudgment interest on actions for recovery of the advancement or overpayment of wages is properly measured from the date of the filing of the petition for the recovery of the wages. *K–Smith Truck Lines, Inc. v. Coffman,* 770 S.W.2d 393, 399 (Mo.App.1989). This means that, even if the circuit court continues to believe on remand that the $30,000 was an advance of Gaebler's contingency fee, prejudgment interest would be calculated from July 28, 1995, the date on which Specialty Restaurants filed its petition to recover the $30,000 advance. This is a matter the circuit court can rectify depending on the conclusions it reaches on remand.

 Specialty Restaurants asked us to dismiss Gaebler's appeal for alleged violation of § 512.050, RSMo 1994. That statute says:

When an appeal is permitted by law from a trial court and within the time prescribed, a party or his agent may appeal from a judgment or order by filing with the clerk of the trial court a notice of appeal. No such appeal shall be effective unless the notice of appeal shall be filed not later than ten days after the judgment or order appealed from becomes final and all charges due to the court reporter for preparation of the transcript of the record of the trial court are paid within ten days of the filing of the notice of appeal. In the event that actual charges due for the preparation of the transcript cannot be readily determined, a deposit in the amount of the estimated charges due for preparation of the transcript shall be paid within ten days of the filing of the notice of appeal. After a timely filing of such notice of appeal, failure of the appellant to take any of the further steps to secure the review of the judgment or order appealed from does not affect the validity of the appeal, but is ground for such action as the appellate court deems appropriate, which may include dismissal of the appeal[.]

This statute became effective on August 28, 1996. Specialty Restaurants claims that because Gaebler filed his notice of appeal on August 30, 1996, and as of September 30, 1996, had not paid the transcript fee, the statute required us to dismiss his appeal.

The circuit court entered its order on July 24, 1996, and Specialty Restaurants filed a post-trial motion on August 14, 1996. Gaebler filed a premature notice of appeal pursuant to Rule 81.05 on August 30, 1996. The circuit court ruled on Specialty Restaurants' post-trial motion on September 4, 1996, and Specialty Restaurants filed an appeal on September 9, 1996. We consolidated the appeals. Gaebler ordered the transcript on September 30, 1996. Rule 81.05(a) specifies that a judgment becomes final on the 30th day after the circuit court enters it, unless the litigants file post-trial motions. If the litigants file post-trial motions, a judgment becomes final when the circuit court rules on the motion. To comply with § 512.050, Gaebler should have ordered *and paid for* the transcript by September 16, 1996.

 Section 512.050, however, does not govern in this case. Rule 81.12(c) governs. On September 16, 1996, the rule required an

appellant to order a transcript within 30 days of filing notice of appeal.[2] Pursuant to authority granted it by Mo. CONST., art. V § 5 (1945), the Supreme Court has said in Rule 41.02 that its rules of civil procedure are to "supersede all [inconsistent] statutes[.]" "[I]f there is a conflict between [the Supreme] Court's rules and a statute, the rule always prevails if it addresses practice, procedure or pleadings." *State ex rel. Union Electric Company v. Barnes,* 893 S.W.2d 804, 805 (Mo. banc 1995). The deadlines for ordering and paying for a transcript are procedural issues. Rule 81.12(c) superseded § 512.050 on September 16, 1996. We deny Specialty Restaurants' motion to dismiss.

ULRICH, C.J., P.J., and HANNA, J., concur.

2. The Supreme Court amended the rule on July 1, 1997.